HEFFERNAN, Appellant, vs. CITY OF JANESVILLE, Respondent.*

*December 5, 1945—February 15, 1946.*

---

* Motion for rehearing denied, with $25 costs, on April 12, 1946.

**300**

*Cleland P. Fisher* of Janesville, for the appellant.

For the respondent there was a brief by *Robert J. Cunningham,* and oral argument by *Otto A. Oestreich,* both of Janesville.

MARTIN, J. Plaintiff was a member of the police department of the city of Janesville. On November 30, 1942, the police and fire commission, after hearing charges against him, reduced him in rank from captain to patrolman and suspended him for one year. The plaintiff appealed to the circuit court under sec. 62.13 (5) (h), Stats. On said appeal it was determined that the order of the board was reasonable. Thereafter, *certiorari* to the board of fire and police commissioners was issued, in which action it was determined that the order suspending plaintiff for one year was invalid, and judgment reversing such order was entered on July 13, 1944. On appeal

to this court judgment was affirmed. See *State ex rel. Heffernan v. Board,* 247 Wis. 77, 18 N. W. (2d) 461. Thereafter, plaintiff filed a claim for his salary during the year of suspension in the sum of $2,190, together with interest, with the common council of the city, and, after no action was taken thereon, this action was commenced.

Plaintiff performed no work for the city during the period of his suspension, although ready, willing, and able so to do. The plaintiff and other policemen took an oath of office but signed no bond. They were not required to take an oath of office or sign a bond. No contract is made between policemen and the city. Their salary is set by the city manager within limits established by the council. A policeman serves a probationary period of one year and thereafter he may be removed only as provided by statute. The statute provides for certain pension rights.

The duties of policemen are prescribed by statute, local ordinances, local police regulations, and orders issued by superior officers. A patrolman has power to serve writs, warrants, and processes, and has the powers and duties of a constable. He has the right to arrest parties in the first instance and order them to court or bring them to the station. Thereafter the disposition of those cases lies entirely with his superior officers. Those superiors may summarily excuse or dismiss the alleged offender, or order the defendant to appear in court, or hold him for appearance in court, or otherwise dispose of the case. The statutes involved are:

Sec. 62.09 (13), Stats., provides:

*"Police.* The chief of police shall have command of the police force of the city under the direction of the mayor. It shall be his duty to obey all lawful written orders of the mayor or common council. The chief and each policeman shall possess the powers, enjoy the privileges and be subject to the liabilities conferred and imposed by law upon constables, and be taken as included in all writs and papers addressed to con-

stables; shall arrest with or without process and with reasonable diligence take before the police justice or other proper court every person found in the city in a state of intoxication or engaged in any disturbance of the peace or violating any law of the state or ordinance of such city and he may command all persons present in such case to assist him therein, and if any person, being so commanded, shall refuse or neglect to render such assistance he shall forfeit not exceeding ten dollars. They shall collect the same fees allowed to constables for similar services."

Sec. 62.13 (5) (h), Stats., provides:

"Any person suspended, reduced or removed after investigation may appeal from the order to the circuit court by serving written notice thereof on the secretary of the board within ten days after the order is filed. Within five days thereafter the board shall certify to the clerk of the circuit court the record of the proceedings, including all documents, testimony and minutes. The action shall then be at issue and shall have precedence over any other cause of a different nature pending in said court, which shall always be open to the trial thereof. The court shall upon application of the accused or of the board fix a date of trial, which shall not be later than fifteen days after such application except by agreement. The trial shall be by the court and upon the return of the board, except that the court may require further return or the taking and return of further evidence by the board. The question to be determined by the court shall be: Upon the evidence was the order of the board reasonable? No costs shall be allowed either party and the clerk's fees shall be paid by the city. *If the order of the board is reversed, the accused shall be forthwith reinstated and entitled to his pay as though in continuous service. If the order of the board is sustained it shall be final and conclusive.*

Sec. 62.09 (1) (a), Stats., enumerates who are city officers. It provides that the officers shall be a mayor, treasurer, clerk, comptroller, attorney, engineer, one or more assessors, one or more justices of the peace, and constables as determined by the common council, a health commissioner or board of health, street commissioner, a board of police and fire commissioners,

except in cities where not applicable, *chief of police, chief of the fire department,* a board of public works, a board of education or of school commissioners, except in cities where not applicable, two aldermen and one supervisor from each ward, *and such other officers or boards as may be created by law or by the council.* Aside from the chiefs of the police and fire departments, other members of the department are not included unless they are included in the general language, "such other officers or boards as are created by law or by the council."

Sec. 5.02 of the city ordinances of the city of Janesville provides, in part, as follows:

"The police department shall consist of a chief of police, two captains of police, and such other officers, assistants and patrolmen as may from time to time be appointed. . . ."

This phraseology excludes assistants and patrolmen from the class of officers. Police patrolmen were not established as city officers by the city council so as to come within the last phrase of sec. 62.09 (1) (a), Stats., "and such other officers or boards as are created by law or by the council."

Sec. 5.03 of the city ordinances gives command of the department to the police chief. The department operates in three shifts. A captain supervises each shift, and the chief, with the city manager, runs the department. Policies and final decisions rest with the chief; lesser decisions with the captains. The patrolmen carry out the actual work of the department but what they do is subject to the supervision of the captains and the chief. Before a case is taken into court it is also subject to the supervision of the city attorney, or, in state cases, the district attorney.

Whether a police patrolman is a public officer has not been specifically passed on by this court. The plaintiff contends that he is a public officer and, as such, is entitled to the salary he would have earned had he not been suspended, without any deduction on account of what he had earned elsewhere during

the period of suspension. Respondent contends that plaintiff was merely an employee of the city; and, since during the period of suspension he had earned several hundred dollars more than what his salary as patrolman would have amounted to, he had sustained no loss and hence was entitled to no recovery in this action.

In *Martin v. Smith,* 239 Wis. 314, 332, 1 N. W. (2d) 163, quoting approvingly from the case of *State ex rel. Barney v. Hawkins,* 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583, the court said:

" 'to constitute a position of public employment a public office of a civil nature, it must be created by the constitution or through legislative act; must possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public; must have some permanency and continuity, and not be only temporary or occasional; and its powers and duties must be derived from legislative authority and be performed independently and without the control of a superior power, other than the law, except in case of inferior officers specifically placed under the control of a superior officer or body, and be entered upon by taking an oath and giving an official bond, and be held by virtue of a commission or other written authority.'

"This definition of 'public office' is no doubt a summary of the law upon the subject arrived at by an analysis and careful consideration of the authorities. The conclusion reached by the Montana court is in accord with the statements contained in the note which is appended to the case. It is certain that a person employed cannot be a public officer, however chosen, unless there is devolved upon him by law the exercise of some portion of the sovereign power of the state in the exercise of which the public has a concern. The annotator cites *In re Appointment of Revisor* (1910), 141 Wis. 592, 124 N. W. 670, in support of this proposition. The president of the university being subject in all things to the action of the Board of Regents, it is the Board of Regents and not the president that exercises some part of the sovereign power of the state. The president of the university is a subordinate of the Board

of Regents in executing and carrying out the policies and laws laid down by it. . . .

"It may seem anomalous to some that the president of a great university should not be a public officer while a justice of the peace or a notary public is a public officer. However, the character of the employment is not determined by the salary paid to the employee or by the importance of the duties which he performs or by the manner in which he is chosen, but rather by the nature of the duties he performs. In the case of the president of the university, the nature of these duties much more nearly conforms to the nature of the duties of a superintendent of schools than it does to the nature of the duties performed by a public officer. He is an employee, not a public officer; he holds a position not an office of trust, profit, or honor under the state. . . ."

President Dykstra was the executive head of the university. He had general power to manage and direct the university and carry out the policies and duties as set forth by the Board of Regents, and as president of the university, by authority of the Board of Regents, and subject to its approval, to make and enforce such rules and regulations as may be necessary or incident thereto.

In *Sieb v. Racine,* 176 Wis. 617, 624, 187 N. W. 989, it was held that a city superintendent of schools was not a city officer.

Appellant argues that the preservation of the peace, life, and property, and the prevention and suppression of crime are matters of state-wide concern and are functions of the sovereign power of the state, and therefore concludes that patrolmen on the police force are public officers. Education is a governmental function of state-wide concern exercised for the benefit of the public to the same extent that preservation of the peace is exercised for the public's benefit. The president of the university and a city superintendent of schools both perform highly important functions in the educational field, but they are not public officers; they are only employees.

In *In re Nagler*, 194 Wis. 437, 216 N. W. 493, the conservation director was authorized to exercise the powers of the commission when it was not in session, a broader power than the university president or a patrolman exercises.

In *Martin v. Smith, supra,* the decision in the *Nagler Case, supra,* was held decisive of the question raised in the *Martin Case*. Quoting from the *Nagler Case,* the court said, page 331:

" 'Respondent claims that the application should be denied because he [the conservation director] is not a public officer and *quo warranto* does not lie. The contention is well taken for the following reasons: He is *employed* by the commission, not *appointed* or *elected*. [Citing.] No definite term of holding the employment is fixed. His salary may be anything the commission fixes not exceeding $6,500. *His powers are in all things subordinate to those of the commission, and he must carry out its policies.* He cannot even make rules, but must adopt those of the commission. Public officers must take an oath as prescribed by sec. 28, art. IV, of the constitution unless exempted therefrom. No exemption appears in the act and no requirement to take an oath. He is not required to give a bond. He is not required to be a citizen of the state, as he must be if a public officer. The reasons for holding that he is not a public officer are stronger in this case than in the case of *Sieb v. Racine* . . . more technical knowledge and ability is required of the director of conservation than of a superintendent of schools.' "

In *Olson v. Superior,* 240 Wis. 108, 2 N. W. (2d) 718, a member of the fire department was improperly dismissed. He brought an action to recover his salary. Judgment was entered dismissing the complaint and plaintiff appealed. It was held that plaintiff was not a public officer. However, at page 114, the court said:

"As there are no findings by the trial court in respect to the amount of salary that should have been paid to plaintiff by

the defendant since that dismissal, and in respect also to the amount to be deducted therefrom, because of his earnings elsewhere during the same period, the cause must be remanded for further proceedings to determine those amounts and the consequent amount of the damages for which he is entitled to have judgment entered herein."

Appellant contends that because the members of the police department have the duties, powers, privileges, and liabilities of constables, they are all, therefore, public officers. The duties of constables are specified in sec. 60.54, Stats. The granting of the powers of constables to patrolmen does not make them officers. The duties prescribed are all subject to the supervision, direction, and command of superior officers. There is no final sovereignty in the constable, and for like reasons there is no final sovereignty in the patrolman.

Appellant must establish his status as an officer of the city of Janesville either by legislative enactment or under the city ordinances. Plaintiff does not come under the city officers enumerated in sec. 62.09 (1) (a), Stats., and he is not designated an officer under any of the city ordinances of the city of Janesville.

The trial court properly held that plaintiff's status was that of a city employee, and that under the rule in *Olson v. Superior, supra,* plaintiff, having earned and received a greater amount during the period of his suspension than the salary he would have received had he worked in the department, was not entitled to any recovery in the instant action.

We have considered other questions discussed in the briefs of counsel, but in view of the conclusion reached on the main issue, there is no occasion to deal with them in this opinion.

*By the Court.*—Judgment affirmed.