BOUTIN, Respondent, vs. CARDINAL THEATRE COMPANY, Appellant.*

*May 5—June 8, 1954.*

* Motion for rehearing denied, with $25 costs, on October 5, 1954.

200

For the appellant there were briefs by *Rieser, Mathys, McNamara & Stafford* of Madison, and oral argument by *Clifford G. Mathys.*

For the respondent there was a brief by *McAndrews & Melli* of Madison, and oral argument by *A. J. McAndrews* and *Joseph A. Melli.*

Brown, J.   Sec. 101.06, Stats., reads:

*"Employer's duty to furnish safe employment and place.* Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reason-

ably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

At all times in question for purposes of the statute appellant was the owner of a motion-picture theater. Respondent entered the darkened theater as a patron while a performance was going on and proceeded to what appeared to be an unoccupied seat. There he sat down but the part of the seat upon which one sits, hereinafter called the "cushion," was not there and respondent sat violently upon the floor thereby receiving the injury to his back of which he now complains. He remained in the theater for approximately an hour and a half and on his way out he reported the fact of the missing cushion to the assistant manager of the theater. At that time respondent did not believe he had sustained any serious harm but as time went on he continued to have increasing pain and disability and served notice of injury and, later, commenced this action within the period prescribed by the statute of limitations.

At the trial when the respondent's witnesses had concluded their testimony, appellant moved for a directed verdict. The trial court denied the motion. The jury found that appellant had failed to furnish respondent with a seat as free from danger to his life, health, safety, and welfare as the nature of the building and the business conducted therein would reasonably permit and that such unsafe condition was a cause of respondent's injuries. There is ample evidence to sustain such findings. The jury then found that appellant, through its employees, in the exercise of ordinary care, ought reasonably to have known of such unsafe condition. Ap-

pellant submits that this answer has no support in the evidence.

Sec. 101.06, Stats., requires the owner of a public building or place of employment to construct, repair, and maintain it so as to render it safe for frequenters. There is no question but that appellant is one of those charged with this duty and that respondent is a frequenter. There can be no question, either, that both the building and the seats for patrons were of safe construction. The seats were of the type standard in motion-picture theaters and in that respect must be considered adequate under the statute. But seats originally safe are to be kept so. That is the duty of maintenance and repair which the statute imposes. Construing this statutory provision, in *Pettric v. Gridley Dairy Co.* (1930), 202 Wis. 289, 293, 232 N. W. 595, we held:

"In terms, the statute imposes the absolute duty upon the employer to repair and maintain the place of employment so as to render the same safe. We have given consideration to the question of whether this statutory provision does impose an absolute duty on the employer so as to make him practically an insurer of the safety of his premises so far as repair and maintenance is concerned. It would seem that in order to make an employer liable for defects in the nature of repair or maintenance he should have either actual or constructive notice of such defects. Natural principles of justice would seem to require that. Such principles of justice are recognized by the common law, as indicated in *Lundgren v. Gimbel Bros.* 191 Wis. 521, 210 N. W. 678, and cases therein cited. This is so in accord with the natural instincts of justice that a contrary purpose should not be imputed to a legislative act in the absence of an unequivocal declaration of such purpose. We therefore consider that the legislative purpose will be given full scope if the language of the statute be interpreted in accordance with these natural principles of justice, and hold that the duty of the employer to repair or maintain his place of employment does not arise until he has either actual or constructive notice of the defect."

For more than twenty years the legislature has acquiesced in this interpretation of the statute and it must be considered the law until the legislature sees fit to change it.

Respondent does not claim that appellant had actual knowledge that this seat was out of repair and was unsafe until respondent, himself, reported that fact more than an hour after the accident. The question then is one of the constructive notice which appellant had of the seat's unsafe condition. The burden of proving all elements of liability, including this one, is on the plaintiff,—the respondent here. Evidence in his behalf warrants a finding that, to appellant's knowledge, approximately ten such cushions were so damaged each week, though not necessarily to the extent that they were rendered unsafe, that appellant removed them for repairs and that appellant kept a dozen extra cushions on hand for replacements while repairs were being made; further, that in the memory of appellant's employees five cushions had been removed and carried away by thieves or vandals during performances and that it was not a difficult or a long operation to unscrew or unbolt the fastenings and remove the cushion from its proper place. Respondent also submits that with this knowledge of vandalism it was appellant's duty to so patrol its theater during performances as to discover promptly the absence of seat cushions from their proper places. Appellant did not maintain such a patrol nor were the theater attendants instructed to watch out for patrons attempting to displace cushions or carry them out of the theater. Because of such dereliction of an alleged duty, respondent submits that appellant had constructive notice of the absence of the cushion in question.

Sec. 101.06, Stats., requires appellant to do everything reasonably necessary to protect the safety and welfare of frequenters of its theater. Sec. 101.01 (11) defines "safe" and "safety" as being such freedom from danger as the na-

ture of the employment, place of employment, or public building will reasonably permit. For the purposes of respondent's argument we may concede that under these circumstances appellant's statutory duty required vigilant inspections by appellant's employees to ascertain that seat cushions were in place and to discover promptly any absences. Under the statute the same rule applied, whether the proprietor is an owner or an employer. *Kaczmarski v. F. Rosenberg Elevator Co.* (1934), 216 Wis. 553, 257 N. W. 598. In *Pettric v. Gridley Dairy Co., supra,* we held that the statute does not make an owner or employer the insurer of the safety of the frequenter and his duty to repair or maintain does not arise until he has at least constructive notice of the defect. To have notice of a defect, of course the defect must exist and, in order to impose liability, it must exist for so long a time that the party charged with responsibility by the safe-place statute has opportunity not only to discover it but to remedy the situation and avoid the accident. *Dierkes v. White Paving Co.* (1939), 229 Wis. 660, 283 N. W. 446. *Reiher v. Mandernack* (1940), 234 Wis. 568, 291 N. W. 758, citing both the *Pettric* and the *Dierkes Cases, supra* (p. 571), held that constructive notice is chargeable only where the condition has existed for an appreciable length of time. The court said (p. 572) :

"If the water came from any other source but the cuspidor, respondent's cause of action has not been established, *because there is no proof of the length of time the water was there upon which to base a holding that the defendant knew or should have known of its presence so that a failure to act under the circumstances was negligence."* Citing *Lundgren v. Gimbel Bros., supra.* (Italics ours.)

The evidence of inadequate inspection during performances may be sufficient to prove that appellant would not have discovered seasonably an existing defect. The difficulty is that such evidence does not create proof of how long the present

defect existed and, particularly, that it existed for so long a period that the appellant's failure to act was negligence. Without proof that the defect had existed so long that a vigilant owner would have discovered and repaired it before respondent attempted to seat himself on the missing cushion, the safe-place statute, under the precedents cited, *supra,* imposes no liability on any owner whether inattentive or not. In the state of the evidence in the case at bar, the determination of when the cushion was removed and by whom rests in sheer speculation. The jury may not be permitted to guess. *Hyer v. Janesville* (1898), 101 Wis. 371, 77 N. W. 729; *Pettric v. Gridley Dairy Co., supra.*

With considerable reluctance we hold that the answer to question No. 3 of the special verdict, that the defendant in the exercise of ordinary care reasonably ought to have known of the unsafe condition, has no evidence in its support, and since the question is directed to a fact essential to appellant's liability, the judgment must be reversed.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the complaint. Appellant's motion for the allowance of full costs for printing its brief in excess of 50 pages is granted.

CURRIE, J. (*dissenting*). The so-called "cushion" which was missing from the theater seat in which plaintiff attempted to sit consisted of the entire portion of the seat on which patrons sat. The top and bottom surfaces of such cushion were 17 by 18 inches, and it was four inches thick. In spite of the defendant theater company's knowledge that vandals did on occasion remove such cushions, it made no effort of any kind to patrol its theater to protect the safety of its patrons from such a hazard.

The third question of the special verdict submitted the following inquiry to the jury:

"Ought the Cardinal Theatre Company through its employees, in the exercise of ordinary care, reasonably to have known of such unsafe condition [the missing cushion]?"

The jury answered such question "Yes." It would seem to be a reasonable assumption that in so doing the jury concluded that if the defendant had exercised ordinary care in the patrolling of its theater, one of such employees assigned to such duty should have discovered the defect caused by the missing cushion in one of the following ways:

(1) By detecting the wrongdoer in the actual act of unscrewing the two bolts holding the cushion in place;

(2) By seeing such wrongdoer moving about the theater with the bulky object of the cushion in his possession, or in attempting to leave the theater with such object in his possession; or

(3) By observing that the seat, which was in the front row of a section of the balcony having an open space in front of the same, was without its cushion.

The three members of the court who join in this dissent are of the opinion that in reaching such a conclusion the jury was merely drawing a legitimate inference from the testimony presented. We cannot agree with the majority view that in so doing the jury was engaging in a prohibited act of speculation. An automobile accident case, in which the jury is permitted to make a finding upon an inference based upon the evidence, often involves the element of speculation to fully as great a degree as would be the case in upholding the jury's answer to the third question of the verdict in the instant case. For example, the evidence discloses that a driver was operating his vehicle at a speed of 30 miles per hour in a 25 mile per hour speed zone, and the jury finds such negligence was causal with respect to a collision with another vehicle at an intersection. By such answer the jury is indulging in speculation to the extent of concluding that the driver

could have taken some effective action to have avoided the collision if he had been proceeding at a speed of 25 miles per hour which he was prevented from doing by going 30 miles per hour.

The case of *Durning v. Hyman* (1926), 286 Pa. 376, 133 Atl. 568, 53 A. L. R. 851, involved the injury to a patron of defendant's moving-picture theater as a result of a portion of a seat giving way when she attempted to sit upon it. The trial court had granted a nonsuit but the Pennsylvania supreme court reversed such order and remanded the case for trial. The following portion of the opinion we believe to be pertinent to the issue of constructive notice now before us in the instant case (286 Pa. 380, 133 Atl. 569) :

"In the present case, the plaintiff entered the moving-picture house, and placed herself upon a seat provided for the use of patrons. It broke and caused the fall. The duty devolved upon the proprietor to show that reasonable diligence had been used to provide safe accommodations, *and that a proper inspection was made to assure their suitable condition.* A clear statement of the applicable rule is found in 1 Thompson on Negligence, section 996, cited with approval in *Sellmer v. Ringling,* 62 Pa. Superior Ct. 410, 411, where the claim of plaintiff, resulting from the fall of unsupported boards in an aisle of circus seats, was held to be for the jury, in absence of proper proof by defendant that due care had been taken.

"It was said by the author referred to: 'The duty assumed by the owners of places to which the public resort in large numbers is manifestly analogous to that which the law imposes on carriers of passengers. Doubtless the true theory is that such persons assume the obligation of exercising reasonable care, and that what will be a reasonable care will be a degree of care proportioned to the danger incurred and the number of persons who will be subjected to that danger. A good expression of the rule of liability, applicable to such cases, is . . . to the effect that the proprietor of such structure is not a warrantor or insurer that it is absolutely safe, but that he impliedly warrants that it is safe for the purpose

intended, save only as to those defects which are unseen, unknown, and undiscoverable. Such being the nature of the obligation, it is obvious that the proprietor of such a building *is under a continuing duty of inspection,* to the end of seeing that it is reasonably safe for the protection of those whom he invited to come into it; and that *if he neglects his duty in this respect, so that it becomes unsafe, the question of his knowledge or ignorance of the defects which render it unsafe is immaterial.'"* (Emphasis supplied.)

As to this continuing duty of inspection on the part of a theater owner, see annotation in 21 A. L. R. (2d) 420, 429.

In the case at bar there was a continuing duty on the part of the defendant theater company to properly patrol its theater to discover the type of defect which caused plaintiff's injury. This was especially incumbent upon it in view of past experience with missing seat bottoms. The defendant should not be permitted to upset the jury's finding on the question of constructive notice by the claim that even if it had properly patrolled the theater it might not have discovered the defect. For the reasons stated herein we would affirm the judgment.

I am authorized to state that Mr. Chief Justice FAIRCHILD and Mr. Justice BROADFOOT concur in this dissenting opinion.