STATE EX REL. NEELEN and others, Respondents, v. LUCAS and others, constituting the Board of Trustees of the Wisconsin Retirement Fund, and another, Appellants.

*April 30—June 2, 1964.*

For the appellants there was a brief and oral argument by *Maurice B. Pasch* of Madison.

For the respondents there was a brief by *Stewart G. Honeck,* attorney, and *Honeck, Mantyh & Arndt* of counsel, all of Milwaukee, and oral argument by *Stewart G. Honeck.*

FAIRCHILD, J.   The purpose of the Wisconsin Retirement Fund is to provide for the payment of annuities and other benefits to employees and beneficiaries of employees of the state and other units of government.[1]  A retirement annuity or other benefit is determined upon the basis of the total amount of credits to the particular employee.  Credits arise from contributions which have been made pursuant to statute by the participating employee and also from amounts which his employer unit is obliged to fund by contributions. One type of credit provided by the employer unit is past service credit in those instances where the employee had been employed by the employer unit before coming under the plan.

The interest of an employee in having all credits to which he is entitled fully recognized is obvious.

Supreme court justices and circuit judges were first made eligible to participate as state employees on January 1, 1952. They were given prior service credit as of that date for state service prior thereto as supreme court justice or circuit judge.[2]

The provision was amended in 1955 so as to include in such prior service credit service as a county judge.[3]

In 1957, it was amended so as to include in such prior service credit service "as full-time judge of a court of record, municipal or inferior."[4]

---

[1] Sec. 66.90 (1), Stats.

[2] Sec. 66.902 (3) (n), Stats. 1951, created by ch. 475, Laws of 1951.

[3] Sec. 66.902 (3) (n), Stats. 1955, as amended by ch. 347, Laws of 1955.

[4] Sec. 66.902 (3) (n), Stats. 1957, as amended by ch. 379, Laws of 1957.

Petitioners are circuit judges in the Second judicial circuit (Milwaukee county). Two of them had previously been judges of the civil court of Milwaukee county and one of them had been a judge of the district court of Milwaukee county. Thus each of petitioners had served as a "full-time judge of a court of record, municipal or inferior." By the terms of sec. 66.902 (3) (n), Stats., as amended by ch. 379, Laws of 1957, each was clearly entitled to past service credit in accordance with that statute.

The board, however, has refused to recognize their entitlement, pointing out that the two petitioners who had been judges of the civil court had participated during their service on that court in the retirement system for employees of Milwaukee county, and the petitioner who had been a judge of the district court had participated during his service on that court in the retirement system for employees of the city of Milwaukee. Those retirement systems are independent of the Wisconsin Retirement Fund. In general, the government units ("municipalities") which may participate as employers in the Wisconsin Retirement Fund include counties and cities, but Milwaukee county and the city of Milwaukee are not included.[5] The board considered that if petitioners' services on those courts were reflected in credits for them in the Wisconsin Retirement Fund as well as in the Milwaukee systems, a duplication would result which the board considered as a departure from precedent and as not having been contemplated by the legislature.

It is true that the board can point to facts indicating that those who formulated the provisions of ch. 379, Laws of 1957, overlooked the possibility that there were circuit judges who had served as judges of municipal or inferior courts of record in Milwaukee county and to facts from which it could be inferred that had attention been called to

[5] Sec. 66.902, Stats.

this feature, the statute would have been drawn so as to exclude them. These facts are as follows:

1. The joint survey committee on retirement systems considered Bill No. 60, S., which became ch. 379, Laws of 1957. Its report appeared in the Senate Journal on March 21, 1957. In analyzing the probable cost of the proposed additional past service credits, the report stated:

" 'It appears that only one person would be affected by this bill initially. This individual was a municipal judge for about 10 years up to 1952, and since then he has been a circuit judge. The cost to the state for prior service credits for the time served as a municipal judge by this individual would be $2,963.

" 'Additional costs could result if additional persons who had been judges of such courts prior to January 1, 1952, and had not previously received such credit subsequently became circuit judges or supreme court justices. It is impossible to estimate the cost of such potential credits.' "

The particular judge referred to was Judge GOODLAND of Racine county and Bill No. 60, S., had been introduced by the senator from that county. The report demonstrates that the committee was unaware that there were other circuit judges then in office to whom the terms of the bill as drawn would apply, and apparently it was a fact that there were no others outside of Milwaukee county. The report did recognize that other persons who had served as judges of municipal or inferior courts of record might later become circuit judges, and they would be entitled to past service credits under the bill.

2. After enactment of ch. 379, Laws of 1957, one or more of petitioners asserted claims under it. Bill No. 654, S., 1957 session, was then introduced by the committee on legislative procedure, considered by the joint survey com-

mittee, and passed by each house by unanimous vote of those present and voting. The bill would have excluded from prior service credit as of January 1, 1952, "service for which retirement credits have been earned or granted under a public retirement system other than the Wisconsin retirement fund." The report of the joint survey committee pointed out that it had been "recently discovered that the prior service credit provisions of the Wisconsin Retirement Fund could conceivably be construed to grant such credits with respect to service covered by other systems." The committee recommended passage, and said: "It is very clear that duplication of coverage which might be possible under a conceivable construction of these provisions, was never intended in connection with the granting of prior service credits to judges."

The bill received a "pocket veto." The then governor neither signed nor returned the bill, but since the legislature prevented its return by adjournment, it did not become law.

Ch. 379, Laws of 1957, grants certain prior service credit as of January 1, 1952, to a circuit judge for service as fulltime judge of a court of record, municipal or inferior. Each of petitioners fits its terms.

A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.[6] There is no ambiguity in the literal terms of the provision under consideration and it is often said that when the words are plain there is no room for judicial construction.[7]

---

[6] *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N. W. (2d) 533.

[7] *Burgess v. Dane County* (1912), 148 Wis. 427, 435, 134 N. W. 841; *Dumore Co. v. Smader* (1944), 245 Wis. 300, 302, 13 N. W. (2d) 915; *Schoenburg v. Klapperich* (1941), 239 Wis. 144, 148, 300 N. W. 237.

A court may also enlarge or restrict in meaning some of the words of a statute in order to harmonize them with the manifest legislative intent of the entire statute.[8]

An obscurity of meaning may also exist, and call for judicial construction where the literal sense of the statutory language would work an absurd result.[9]

Primarily, however, the meaning must be read from the language chosen by the legislature, and the courts are not free to determine whether different provisions would have been enacted if the legislators had given some or greater attention to the application of the statute upon a particular set of facts.

The principle which courts follow in confining themselves, as closely as possible to the terms of a statute, and resorting to other sources of interpretation only where the language leaves a doubt, has been well explained by Mr. Justice FRANKFURTER:

"Even within their area of choice the courts are not at large. They are confined by the nature and scope of the judicial function in its particular exercise in the field of interpretation. They are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the states-

---

[8] *Estate of Spooner* (1920), 172 Wis. 174, 179, 177 N. W. 598; *State ex rel. Thieme v. Gregory* (1930), 202 Wis. 326, 328, 232 N. W. 546.

[9] *Rice v. Ashland County* (1900), 108 Wis. 189, 192, 84 N. W. 189; *Worachek v. Stephenson Town School Dist.* (1955), 270 Wis. 116, 124, 70 N. W. (2d) 657; *Isaksen v. Chesapeake Instrument Corp.* (1963), 19 Wis. (2d) 282, 290, 120 N. W. (2d) 151.

manship of policymaking might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction. 'If there is no meaning in it,' said Alice's King, 'that saves a world of trouble, you know, as we needn't try to find any.' Legislative words presumably have meaning and so we must try to find it." [10]

Although the equity or wisdom of reflecting in retirement provisions for a circuit judge a period of past service which has already been reflected to his advantage in retirement provisions under a different system is debatable, the result is neither patently out of harmony with the purposes of the state retirement system, nor absurd. There being no ambiguity to be found by any test, there is no occasion for judicial construction. Any inferences of mistake or inadvertence which might be drawn from the legislative history relied on by the board are thus irrelevant as a matter of law.

Therefore, the judgment of the circuit court must be affirmed.

The board appealed from the decision of the circuit court rather than from the judgment. The judgment has, however, been entered, and respondents have argued its merits without objection. We therefore have jurisdiction over both the judgment and the parties. [11]

*By the Court.*—Judgment affirmed.

GORDON, J., took no part.

---

[10] Frankfurter, Some Reflections on the Reading of Statutes (1947), 1, 13.

[11] *Estate of Burns* (1964), 23 Wis. (2d) 175, 179, 127 N. W. (2d) 239.