STATE EX REL. KLINGLER, Respondent, v. BAIRD and another, Appellants. [Case No. 311.]

STATE EX REL. SCHILLING, Respondent, v. BAIRD and another, Appellants. [Case No. 312.]

*Nos. 311, 312. Argued November 1, 1972.—Decided November 28, 1972.*
(Also reported in 202 N. W. 2d 31.)

462

For the appellants there was a brief by *Willis J. Zick,* corporation counsel, and oral argument by *August E. Fabyan, Jr.,* assistant corporation counsel.

For the respondent there was a brief by *Neal P. Nettesheim* and *James D'Amato,* both of Waukesha, and oral argument by *Mr. Nettesheim.*

CONNOR T. HANSEN, J. This appeal presents two issues:

1. Does sec. 59.21 (8) (b) 6, Stats., provide for the deduction of outside earnings from the amount of back pay due a deputy sheriff who has been unreasonably suspended?

2. For the computation of the amount of back pay due an unreasonably suspended deputy sheriff, does the period for which the sheriff is liable cease on the date the deputy sheriff was offered reinstatement to the payroll but not active service?

*Effect of sec. 59.21 (8) (b) 6, Stats.,
in determining amount of back pay.*

The action in the trial court was one for mandamus. We are of the opinion that mandamus is not the proper remedy; however, neither party has objected thereto, and the issue is not raised on the appeal.

Sec. 59.21 (8) (b) 6, Stats., provides:

". . . If the order of the committee is reversed, the accused shall be forthwith reinstated and *entitled to his pay as though in continuous service.* If the order of the committee is sustained it shall be final and conclusive." (Emphasis supplied.)

Waukesha county, in sec. VI of the Waukesha County Civil Service Ordinance, has adopted the provisions of this statute as it pertains to deputy sheriffs.[1]

---

[1] Effective January 2, 1961, Sec. VI, provides:

". . . **Suspension and dismissal** (a) All suspensions and dismissals of deputy sheriffs holding permanent appointments to the positions of deputy sheriff shall be conducted in accordance with section 59.21 (8) (b) of the Wisconsin Statutes."

Schilling maintains that the language of this statute, as adopted by ordinance, is plain and unambiguous. He argues that the language, ". . . entitled to his pay as though in continuous service," makes no reference to any deductions from back pay and can only be interpreted to mean that he is entitled to the full amount of pay he would have earned at his position as deputy sheriff for the period in which he was suspended.

The sheriff contends that the legislature intended only that the employee be restored to the same financial position in which he would have been had he not been suspended. The sheriff argues that if Schilling were allowed to recover his full back pay without deductions therefrom of outside earnings during the period of suspension, Schilling would be in a better position than "as though in continuous service." Had Schilling been in the continuous service of the sheriff's department, he would not have had the opportunity to earn the outside income. Therefore, the language, "entitled to his pay as though in continuous service," requires that the amount otherwise earned during the period of suspension be deducted from the pay due for the same period.

Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses. *Evangelical Alliance Mission v. Williams Bay* (1972), 54 Wis. 2d 187, 194 N. W. 2d 646; *Kindy v. Hayes* (1969), 44 Wis. 2d 301, 171 N. W. 2d 324; *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 128 N. W. 2d 425; *Mundt v. Sheboygan & Fond du Lac R. R. Co.* (1872), 31 Wis. 451. Both the sheriff's and Schilling's interpretation of the language of sec. 59.21 (8) (b) 6, Stats., are reasonable; therefore, ambiguity exists.

Where a statute is ambiguous, it is appropriate to endeavor to determine the legislative intent. This is frequently done by resorting to matters outside the face of the statute. Legislative intent can be disclosed by the

language of the statute in relation to its scope, historical context, subject matter and object.

The legislative record indicates that the language of sec. 59.21 (8) (b) 6, Stats., pertaining to the appeals and compensation of unreasonably suspended deputy sheriffs, was adopted in its entirety from the long-established procedure of appeal and compensation, previously created by the legislature in sec. 62.13 (5) (i), for the unreasonably suspended city firemen and/or policemen. Where the circuit court, after examining the evidence, finds that a city fireman or policeman has been unreasonably suspended, sec. 62.13 (5) (i), in part, provides:

". . . the accused shall be forthwith reinstated and *entitled to his pay as though in continuous service. . . .*" (Emphasis supplied.)

The language of sec. 59.21 (8) (b) 6, Stats., "entitled to his pay as though in continuous service," has never been construed by this court; however, the identical language in sec. 62.13 (5) (i) has been interpreted by this court on a number of occasions.

In *Olson v. Superior* (1942), 240 Wis. 108, 2 N. W. 2d 718, the plaintiff, Olson, brought an action to recover damages sustained by reason of the unlawful dismissal and failure of the city to rehire plaintiff as a pipeman on its fire department. Holding that the plaintiff was entitled to damages, this court, page 114, went on to state:

". . . As there are no findings by the trial court in respect to the amount of salary that should have been paid to plaintiff by the defendant since that dismissal, and in respect also to the amount to be deducted therefrom, because of his earnings elsewhere during the same period, the cause must be remanded for further proceedings to determine those amounts and the consequent amount of the damages for which he is entitled to have judgment entered herein."

This court, in *Heffernan v. Janesville* (1946), 248 Wis. 299, 21 N. W. 2d 651, was confronted with similar facts and issues as raised in the instant appeal. In *Heffernan, supra,* the plaintiff sought to recover salary for the year of his suspension from the police department of the city of Janesville. At the time of the suspension, plaintiff was a police patrolman. During the year of his suspension, he had earned by work elsewhere more than the amount his pay would have been had he worked for the city. Affirming the trial court's dismissal of the action, this court, in *Heffernan, supra,* page 307, held:

"The trial court properly held that plaintiff's status was that of a city employee, and that under the rule in *Olson v. Superior, supra,* plaintiff, having earned and received a greater amount during the period of his suspension than the salary he would have received had he worked in the department, was not entitled to any recovery in the instant action."

Taken together, *Olson, supra,* and *Heffernan, supra,* provide that by the language, "entitled to his pay as though in continuous service," of sec. 62.13 (5) (i), Stats., the legislature has indicated its intention that reinstated city firemen and/or policemen are entitled to only the difference between the amount of pay due for the period in question and the amount earned in other employment for the same period.[2]

This court's interpretation of a statute becomes part thereof unless the legislature sees fit to amend the statute. *Salerno v. John Oster Mfg. Co.* (1967), 37 Wis. 2d 433, 155 N. W. 2d 66. This court's construction of the language in sec. 62.13 (5) (i), Stats., has remained unchanged for thirty years. Legislative inaction over such a period of time may be deemed legislative

---

[2] *See: Matczak v. Mathews* (1953), 265 Wis. 1, 60 N. W. 2d 352.

approval of such a construction. *In re Estate of Pamanet* (1970), 46 Wis. 2d 514, 175 N. W. 2d 234, 177 N. W. 2d 105; *Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 64 N. W. 2d 848. When a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally. *Evans v. Michelson* (1942), 241 Wis. 423, 6 N. W. 2d 237; *Milwaukee County v. City of Milwaukee* (1933), 210 Wis. 336, 246 N. W. 447.

When the legislature enacted sec. 59.21 (8) (b) 6, Stats., establishing an appeal procedure and a method of determining compensation of an unreasonably suspended county deputy sheriff, it adopted the langauge and procedure set forth in sec. 62.13 (5) (i), relating to unreasonably suspended city firemen and/or policemen. Insofar as the issue presented on this appeal is concerned, the language of the two statutes is identical. Thus, when the legislature enacted sec. 59.21 (8) (b) 6, the presumption is that it did so with full knowledge of existing laws, including both the statutes and the court decisions interpreting it.[3]

Therefore, we conclude that the legislature intended that the language, "entitled to his pay as though in continuous service," of sec. 59.21 (8) (b) 6, Stats., is to receive the same construction as this court has construed the identical language in sec. 62.13 (5) (i).

Schilling, as an employee of the county, under the provisions of sec. 59.21 (8) (b) 6, Stats., and the Waukesha County Civil Service Ordinance, is entitled to the difference between his full back pay accrued from the date of suspension to the date of reinstatement and the amount earned in other employment during the same period. In determining the difference between

---

[3] *Kindy v. Hayes, supra,* page 314; *Town of Madison v. City of Madison* (1955), 269 Wis. 609, 614, 70 N. W. 2d 249.

full back pay and earnings from other employment, two factors should be given mutual consideration. First, whether such earnings accrued during what would have been his regularly assigned hours of duty, and second, the amount of his earnings, if any, which he was receiving outside his regularly assigned hours of duty, immediately preceding his suspension.

*Date of reinstatement.*

A dispute exists as to the length of the period over which the sheriff owes Schilling back pay.

There is no dispute that the date of suspension was September 14, 1970.

September 16, 1971, the attorney for Schilling wrote to the sheriff requesting reinstatement of Schilling. October 14, 1971, the sheriff replied and advised that Schilling could be reinstated to active duty effective October 18, 1971. October 16, 1971, the attorney for Schilling wrote to the sheriff and advised that Schilling could report for duty on October 25, 1971, due to his absence from the city.

October 19, 1971, the sheriff wrote to Schilling and advised that Schilling would be reinstated to the payroll as soon as he could report, but would not be given a duty assignment. He would earn his pay by reporting to the day-shift commander at the department at 9 a. m. on each duty day for the purpose of affirming his availability for duty, commencing October 25, 1971, until such time as the district attorney's office completed a pending investigation of possible criminal charges against Schilling. Among other things, it was asserted that the district attorney's office wanted to complete its study of a recent grand jury investigation.[4] Schilling refused to accept those terms. November 19, 1971, he

---

[4] Klingler was offered similar terms effective October 21, 1971.

reported to the sheriff's department and was reinstated to the payroll and given a duty assignment.

The sheriff maintains that his liability for back pay terminated as of the date he offered to reinstate Schilling to the payroll, October 25, 1971. Schilling insists that the date of effective reinstatement was November 19, 1971.

The record does not indicate that the sheriff abandoned (in the trial court) his position as to the October 25, 1971, date. His return to the alternative writ of mandamus, wherein he alleges Schilling's refusal to accept the earlier date of reinstatement to the payroll, negates the abandonment contention of Schilling.

The sheriff was confronted with a difficult problem. His resolution thereof was not unreasonable. Schilling was entitled to be reinstated following the decision of the circuit court. However, there was a possibility of criminal charges being placed against him, and, therefore, the sheriff was responsible for the internal integrity of his department. The sheriff resolved this issue by offering to place Schilling on the payroll effective October 25, 1971, but indicated that Schilling would not be given a duty assignment until the district attorney had decided whether to file criminal charges against Schilling. The sheriff indicated that Schilling would be given a duty assignment following the district attorney's decision not to file criminal charges. This could have occurred at any time. The sheriff's request that Schilling present himself each day to the day-shift commander to indicate his availability for work was not unreasonable. The embarrassment this may have caused Schilling is outweighed by the need of internal integrity within the law enforcement agency.

The effective date of termination of the sheriff's liability for back pay was October 25, 1971, the date Schilling refused reinstatement to the payroll.

It is necessary that the cause be remanded to the trial court for further proceedings so that the trial court can make findings as to the amount of back pay due petitioner in accordance with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion. Neither party shall tax costs on this appeal.