HURST, Plaintiff in error, v. STATE, Defendant in error.

*No. State 216 (1974). Submitted on briefs February 4, 1976.— Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 392.)

For the plaintiff in error the cause was submitted on the brief of *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *David J. Becker,* assistant attorney general.

HANLEY, J. Two issues are presented on this appeal:
1. Is phencyclidine a dangerous drug within sec. 161.30 (1) (a) 1, Stats. 1969, and did the complaint establish it as such?
2. Did the trial court abuse its discretion in sentencing defendant to three years' imprisonment?

Hurst was charged under sec. 161.30 (2), Stats. 1969, with the delivery of a dangerous drug without a prescription. Sec. 161.30 (1) provides the definitions:

"(a) 'Dangerous drug' means any of the following:
"1. *Any drug or drug-containing preparation which is subject to the provisions of ss. 303 (c) and 503 (b) of the federal food, drug and cosmetic act, as amended.*
"2. Any preparation which contains barbiturates, sulfonamides, thyroid, cinchophen, neocinchophen, aminopyrine, amphetamine, desoxyephedrine, diethylstilbestrol. ergot or any salts, derivatives, compounds, combinations or mixtures thereof except wherein one or more of the said drugs are in those combinations which by federal law may be dispensed without the prescription of a physician.
"3. 'Lysergic Acid,' 'LSD' (lysergic acid diethylamide), peyote, mescaline, psilocyn or psilocybin, or any salts, derivatives, compounds, combinations or mixtures thereof and any substances which are chemically identical with such substances.
"4. Marijuana, coca leaves, cocaine or ecgonine.
"5. Any other drug found by the dangerous substance control council, after due notice and opportunity for public hearing, to possess psychological or physical dependency potentialities similar to those drugs listed herein, and proclaimed by the governor to have been so found by the council, and any compound, manufacture, salt, derivative or preparation of the foregoing. The council is authorized to issue necessary rules for carrying out this subsection.
"(b) 'Delivery' means selling, dispensing, giving away or supplying in any other manner." (Emphasis supplied.)

The complaint specified that the drug was one which is subject to the provisions of secs. 303 (c) and 503 (b)

of certain federal drug laws by reference to sec. 161.30 (1) (a) 1. This particular paragraph of our statutes was part of the reorganization of the state drug laws through ch. 384, Laws of 1969, which went into effect in February 1970. Prior to that enactment, the crime of sale of dangerous drugs was defined and prohibited by sec. 151.07, Stats. 1967. The particular equivalent of the definition of the subsection involved here was sec. 151.07 (1) (a) 1.

"Any drug or drug-containing preparation, the original container of which bears the statement 'caution—federal law prohibits dispensing without prescription.' "

In its reenactment, the section referred to items which are subject to the provisions of secs. 303 (c) and 503 (b) of the Food, Drug and Cosmetic Act. Sec. 503 (b), contained in 21 USCA, sec. 353 (b), defines such drugs.

"(b) (1) A drug intended for use by man which—
"(A) is a habit-forming drug to which section 352 (d) of this title applies [Sec. 352 (d). '(d) If it is for use by man and contains any quantity of the narcotic or hypnotic substance alpha eucaine, barbituric acid, betaeucaine, bromal, cannabis, carbromal, chloral, coca, cocaine, codeine, heroin, marihuana, morphine, opium, paraldehyde, peyote, or sulphonmethane; or any chemical derivative of such substance, which derivative has been by the Secretary, after investigation, found to be, and by regulations designated as, *habit forming;* unless its label bears the name and quantity or proportion of such substance or derivative and in juxtaposition therewith the statement "Warning—May be habit forming." ']; or
"(B) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or
"(C) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug, . . ." (Emphasis supplied.)

Although containing surplusage on the manner of prescription, sec. 503 (b), above, does describe certain drugs in paragraph (1) (A), (B) and (C). Sec. 303 (c), embodied in 21 USCA, sec. 333 (c), seems less clear:

"(c) No person shall be subject to the penalties of subsection (a) of this section, (1) for having received in interstate commerce any article and delivered it or proffered delivery of it, if such delivery or proffer was made in good faith, unless he refuses to furnish on request of an officer or employee duly designated by the Secretary the name and address of the person from whom he purchased or received such article and copies of all documents, if any there be, pertaining to the delivery of the article to him; or (2) for having violated section *331 (a)* or (d) of this title, if he establishes a guaranty or undertaking signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the article, to the effect, in case of an alleged violation of section 331 (a) of this title, that such article is not adulterated or misbranded, within the meaning of this chapter designating this chapter or to the effect, in case of an alleged violation of section 331 (d) of this title, that such article is not an article which may not, under the provisions of section 344 or 355 of this title, be introduced into interstate commerce; or (3) for having violated section *331 (a)* of this title, where the violation exists because the article is adulterated by reason of containing a color additive not from a batch certified in accordance with regulations promulgated by the Secretary under this chapter, if such person establishes a guaranty or undertaking signed by, and containing the name and address of, the manufacturer of the color additive, to the effect that such color additive was from a batch certified in accordance with the applicable regulations promulgated by the Secretary under this chapter; or (4) for having violated section 331 (b), (c) or (k) of this title by failure to comply with section 352 (f) of this title in respect to an article received in interstate commerce to which neither section 353 (a) nor 353 (b) (1) of this title is applicable, if the delivery or proffered delivery was made in good faith and the labeling at the time thereof contained the same

directions for use and warning statements as were contained in the labeling at the time of such receipt of such article; or (5) for having violated section 331 (i) (2) of this title if such person acted in good faith and had no reason to believe that use of the punch, die, plate, stone, or other thing involved would result in a drug being a counterfeit drug, or for having violated section 331 (i) (3) of this title if the person doing the act or causing it to be done acted in good faith and had no reason to believe that the drug was a counterfeit drug." (Emphasis supplied.)

In defining "dangerous drug," the legislature included those drugs which are subject to the provisions of the above two broad sections of federal law. Sec. 503 (b) defines which drugs are subject to its provisions, and since its provisions define what is proper issuance or its contrary "misbranding," which in turn is a prohibited act under 21 USCA, sec. 331, and which in turn has its penalty defined in 21 USCA, sec. 333 (a) (the subsection (a) referred to in the provision quoted immediately above), the defined drugs are part of the Wisconsin law. Additionally, provision (4) of 21 USCA, sec. 333 (c) above makes reference to drugs which violate 21 USCA, sec. 352 (f) ; these are drugs which pose dangers to health by themselves or in unsafe dosages or methods of administration to children or those with conditions pathological to their use of the drug, but which are not of a higher order of danger to which sec. 503 (b) applies.

Defendant suggests that the reference to sec. 303 (c) was meant to except stimulants, depressants and hallucinogens from the drugs incorporated by reference to federal law. At the time the Wisconsin law was enacted, sec. 303 (a) and (b) read as follows:

"SEC. 303. (a) Any person who violates a provision of section 301 *(other than a provision referred to in subsection (b) of this section)* shall be imprisoned for not

more than one year or fined not more than $1,000, or both; except that if any person commits such a violation after a conviction of him under this subsection has become final, or commits such a violation with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both.

"(b) (1) Any person who violates clause (1), (2), or (3) (A) of section 301 (q), or violates, with respect to a *depressant or stimulant drug,* any of the provisions of paragraph (3) of section 301 (i), shall, except as otherwise provided in paragraph (2) of this subsection, be imprisoned for not more than five years or fined not more than $10,000, or both.

"(2) Any person eighteen or older who violates clause (2) of section 301 (q) by selling, delivering, or otherwise disposing of any *depressant or stimulant drug* to a person who is under twenty-one, shall be imprisoned for not more than ten years or fined not more than $15,000, or both, except that if any person commits such a violation after a conviction of him under this paragraph has become final, he shall be imprisoned for not more than fifteen years or fined not more than $20,000, or both.

"(3) (A) Except as otherwise provided in this subparagraph or in subparagraph (B), any person who violates clause (3) (B) of section 301 (q) shall be imprisoned for not more than one year or fined not more than $1,000, or both. If any person commits such a violation after two prior convictions of him for violation of such clause have become final, he shall be imprisoned for not more than three years or fined not more than $10,000, or both.

"(B) In the case of any person who is convicted for the first time of violating a provision of section 301 (q) and whose conviction was for violating clause (3) (B) of such section, the court may suspend the imposition or execution of sentence and place such person on probation subject to such conditions as the court may impose and for such period, not to exceed one year, as the court may prescribe. The court may, in its discretion, unconditionally discharge such person from probation prior to the expiration of the maximum period prescribed for such person's probation. Such discharge shall automatically

set aside the conviction, and the court shall issue to such person a certificate to that effect. If during the period of his probation such person does not violate any of the conditions of his probation, his conviction shall at the expiration of such period be automatically set aside, and the court shall issue to such person a certificate to that effect." (Emphasis supplied.)

Sec. 303 (c), of course, referred to subsection (a) which in turn excepts provisions covering "depressants and stimulants," which is defined elsewhere to include hallucinogens. *See:* 21 USCA, sec. 321 (v). Apparently those drugs, for which separate provisions had been enacted because of their growing use, were excepted from the circumstances of sec. 303 (c) where criminal liability was withheld. Thus, Hurst concludes that the general class of "depressants and stimulants" were not included in sec. 303 (c) and thus not in sec. 161.30 (1) (a) 1, Stats. 1969, but some depressants, stimulants and hallucinogens were specifically included by sec. 161.30 (1) (a) 2 and 3. Phencyclidine is a depressant, *see:* sec. 161.18 (3), Stats. 1973, but was not listed in sec. 161.30 (1) (a) 2 or 3, Stats. 1969.

The state contends that although sec. 161.30 (1) (a), Stats. 1969, is a definition statute for "dangerous drug," the reference to sec. 303 (c) was intended to create exceptions to liability under sec. 161.30. This conclusion is bolstered by the charge that the defendant's construction "takes us on a voyage for which the legislature has provided neither chart nor compass."

Construction of a statute is undertaken when ambiguity exists. *Kindy v. Hayes* (1969), 44 Wis. 2d 301, 308, 171 N. W. 2d 324. The test is whether reasonably well-informed persons could understand the statute in two or more different senses. *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 267, 128 N. W. 2d 425. The interaction of two statutes may create doubt as to their interpretation. *Morrissette v. DeZonia* (1974),

63 Wis. 2d 429, 436, 217 N. W. 2d 377, and certainly can create doubt when they are joined for purposes not foreseen by their drafters. Secondary sources may then be consulted for aid in discerning the legislative intent for so joining them. *State ex rel. Klingler v. Baird* (1972), 56 Wis. 2d 460, 465, 202 N. W. 2d 31. The scope, historical context, subject matter and object of the statute are appropriately to be considered. *Id.* at page 466.

The joint reference to the federal laws replaced former sec. 151.07 (1) (a) 1, Stats. 1967 which, as quoted earlier, adequately summarizes federal sec. 503 (b) (4). If that was the intent of the legislature, there was no need to add citation to sec. 303 (c). This latter section, although in a context of mitigating liability, casts out one group of sec. 503 (b) drugs ("depressants or stimulants") and embraces another (drugs dangerous because of inadequate instruction labels) as "subject to its provisions." These inclusions and exclusions could have been reached more simply by appropriate reference to other federal laws. *See:* 21 USCA, secs. 321 (v) and 352 (f). Since a drug must be subject to the provisions of both statutes, the net effect is to have sec. 161.30 (1) (a) 1, Stats. 1969, refer to all federal controlled substances other than the federal class of "depressants and stimulants," for which this state already had a separate enactment and for which a "dangerous substance control council" had the power to include other substances not listed at the time of the enactment. Sec. 161.30 (1) (a) 5. Apparently phencyclidine was never so added, and was not specifically classified as illicit until the Uniform Control Substance Act which is now in effect.

Although this reasonable purpose is obscured by the complexity of the federal statutes, the labor or perusal does not bar the exercise to find it as the state would suggest. Similar difficulties are present in pursuing its

view of sec. 303 (c). It is rather unusual to define a "dangerous drug" by reference to circumstances in which possession or delivery is not illegal because of good faith and the receipt of a guaranty of federal compliance. The character of the substance does not change because of the noncriminal acts of the holder. It is also unclear why such exemption was added when the matter was more broadly addressed in sec. 161.30 (8), Stats. 1969. The state distinguishes the latter as an exemption for *people* rather than for circumstances as in sec. 303 (c), but the section applies only to them when engaged in their activities that mirror the circumstances:

"(8) Subsections (2), (3), (4) and (7) shall not be applicable to the wholesale delivery of dangerous drugs to persons included in any of the classes hereinafter named; nor to the agents or employes of such persons for use in the usual course of their business or practice or in the performance of their official duties, as the case may be; nor to the possession of dangerous drugs by such persons or their agents or employes for such use:

"(a) Pharmacists.

"(b) Practitioners.

"(c) Persons who procure dangerous drugs for the purpose of lawful research, teaching or testing and not for resale.

"(d) Hospitals and other institutions which procure dangerous drugs for lawful administration by practitioners.

"(e) Officers or employes of the federal government.

"(f) Manufacturers and wholesalers."

and

"(i) 'Wholesaler' means persons engaged in the business of distributing dangerous drugs to persons included in any of the classes named in sub. (8)." Sec. 161.30 (1) (i), Stats. 1969.

At any rate, the circumstances described by sec. 303 (c) either directly or through its reference to 21 USCA, sec. 331, all are instances of transactions beyond state

control as in interstate commerce. Our statute also incorporated only drugs "subject to those provisions," not the provisions themselves. If the exemptions of sec. 303 (c) are adopted in the view of the state, then the requirements of sec. 503 (b) apparently are also incorporated. This was not the legislative intent.

Even granting that the reference to sec. 303 (c) was not meant to exclude the federally defined "depressants and stimulants," the state had the burden of issuing a complaint which, given the benefit of all reasonable inferences, is sufficient to establish probable cause that the named defendant committed the alleged offense. *State v. Haugen* (1971), 52 Wis. 2d 791, 798, 191 N. W. 2d 12. Under the practical analysis suggested in *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 230, 161 N. W. 2d 369, the complaint is lacking an answer to the question of *why* the defendant is believed to have committed the crime. Timely challenges to these deficiencies were entered and effectually denied throughout the proceedings.

In the complaint, Hurst was charged with the delivery of a substance called phencyclidine, which substance is alleged as "defined in sec. 161.30 (1) (a) 1." Through reference to federal sec. 503 (b), there are three classes of substances thus defined as "dangerous drugs." One group of habit-forming substances is listed by cross-reference to another statute. Another category of newly discovered drugs, whose potentialities are unknown, is defined in another statute reached by cross-reference. A description of the qualities and history of phencyclidine, supplied by the state on this appeal, appears to eliminate it from those groups. There remains the category of drugs which are not safe for use except under medical supervision because of their toxicity, or other potentiality for harmful effect, or the method of their use, or the

collateral measures necessary for their use. 21 USCA, sec. 353 (b) (1) (B).

The state sees a sufficient complaint because of the allegation that phencyclidine is a drug requiring prescription by federal law. This allegation merely confirms that Hurst was being charged under sec. 503 (b), because a prescription is required for all substances that meet any of the three categories described therein. It begs the question as to whether the substance phencyclidine meets any of the criteria which compel issuance only by prescription.

In federal prosecutions under sec. 503 (b), an essential element of the offense is a showing that a substance is a "toxic drug" or one with a potentiality for harmful effect. *Marks v. United States* (5th Cir. 1962), 310 Fed. 2d 49, 51; *United States v. Key* (6th Cir. 1967), 371 Fed. 2d 421, 423, certiorari denied 386 U. S. 982, 87 Sup. Ct. 1287, 18 L. Ed. 2d 230. Testimony by experts that a drug is unsafe unless taken on a physician's advice is indeterminative and has been characterized as "a proposition which insofar as it attempts to state a legal conclusion is not, of course, for them to express," *United States v. Article of Drug Labelled "Decholin"* (E. D. Mich. 1967), 264 Fed. Supp. 473, 477. The conclusion in the complaint as to prescription requirement, which the state attributes to the chemist despite absence of such reference in his report attached to the complaint or in his subsequent testimony in the preliminary examination, is similarly defective. Allegation and proof of the particularities of the toxic nature of the substance is required in all cases, whether it be relatively unknown, *Decholin, supra,* or as well known as amphetamines, *Marks, supra.* The mere conclusion that any given substance is covered is wholly insufficient.

Although the state claims it would have produced testimony of the nature of phencyclidine at trial, it ignores

the requirement of pleading facts either sufficient in themselves or giving rise to reasonable inferences that phencyclidine possessed characteristics embraced by one of the categories of sec. 503 (b) as incorporated by reference into our law. There is no listing of substances which are included as meeting that federal law, because the drafters left that question to the judiciary rather than use a legislative list. *Decholin, supra,* at page 479. Because the complaint lacked any allegation as to how phencyclidine was a "dangerous drug" under federal sec. 503 (b), the question of *why* Hurst was charged with a violation went unanswered despite timely and repeated references to the problem. We conclude that the complaint in this case does not detail sufficiently all the facts to establish probable cause. Consequently the judgment must be reversed.

*By the Court.*—Judgment of conviction is reversed, the sentence is vacated and the action dismissed.