KINDY and others, Respondents, V. HAYES and others (Wisconsin Board of Examiners in Optometry), Appellants.*

*No. 111. Argued September 2, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 324.)

* Motion for rehearing denied, without costs, on December 19, 1969.

302

304

For the appellants the cause was argued by *David J. Hanson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

For the respondents there was a brief by *Stewart G. Honeck* of Milwaukee, and *John D. Winner* of Madison, attorneys, and *Honeck, Mantyh & Arndt* of Milwaukee, and *Jasper, Winner, Perina & Rouse* of Madison, of counsel, and oral argument by *Stewart G. Honeck*.

ROBERT W. HANSEN, J.    Respondents' brief begins with this statement:

"The correct answers to the several questions involved on this appeal hinge upon a recognition and acknowledgment that the status of the practice of optometry in Wisconsin . . . is that of a mechanical art or craft, as contrasted to the holding in some states that the practice constitutes a profession."

Attention is then called to a 1940 case, a *quo warranto* proceeding instituted to prevent a corporation from practicing optometry, in which optometry is held to be ". . . a skilled calling . . ." but not ". . . a profession involving a relation of special confidence between prac-

titioner and patient." [3] This holding that optometry is not a part of the practice of medicine is the law in this state. However, it does not follow that a mountain has been created with a few professional groups clustered on the mountaintop and all other skilled occupations and callings huddled at the bottom. The optometrist is not a doctor of medicine, but neither is he a field hand or blacksmith's helper. The skill, knowledge and education required of applicants for an optometry license, as well as the direct relationship of optometry to the public health and well-being, demonstrate that this is indeed a skilled calling. The distinction between a highly skilled calling and a profession is one of degree, not kind. [4]

The premise that optometry is not a phase of the practice of medicine is correct. The conclusion that it becomes indistinguishable from any other form of selling or peddling merchandise does not follow. Respondents cite a text authority to the point that whether optometry is regarded merely as a mechanical art or "as approaching the dignity of one of the learned professions" is of importance since only in the latter case will courts ". . . not tolerate various commercial practices, arrangements, and influences which might be regarded as perfectly proper in a non 'professional' relationship." [5] That is heady wine, to be sipped cautiously. Carried to a logical conclusion it would invalidate existing statutes banning unprofessional advertising [6] and in fact all forms of unprofessional conduct [7] by those licensed to practice optometry.

---

[3] *State ex rel. Harris v. Kindy Optical Co.* (1940), 235 Wis. 498, 501, 292 N. W. 283.

[4] "Regulations and rules governing the practice of optometry depend not upon the status given the optometrist, but on their reasonable relationship to the protection of the public." *Kachian v. Optometry Examining Board*, ante, p. 1, 170 N. W. 2d 743.

[5] Annot. 88 A. L. R. 2d 1290, 1293.

[6] Stats., sec. 153.08 (2).

[7] Stats., sec. 153.08 (1).

Respondents do not take the reasoning to such an extreme but do argue that the statutes relating to "unprofessional advertising" and "unprofessional conduct" are to be interpreted to ". . . give force and substance to this court's ruling that optometry is not a profession." It would appear sounder to begin with stating that the statutes are to be given their clear and express meaning, and, in case of ambiguity, the legislative intent, if it can be determined, is to be carried out.

This appeal requires the analysis and interpretation of the statutes on which the actions of the board here involved are based. The powers of an administrative board to make or enforce rules and regulations stems from the statute which created and outlined the scope of the board's duties and responsibilities.[8]

The statutes relevant to this appeal appear to be:

Sec. 153.03 (4) (defining and limiting the rule-making power of the board).

Sec. 153.07 (stating that unprofessional conduct by optometrists is a ground for revocation of license).

Sec. 153.08 (1) (defining unprofessional conduct of optometrists without stating that unprofessional advertising is unprofessional conduct).

Sec. 153.08 (2) (defining unprofessional advertising by optometrists without stating that unprofessional advertising is unprofessional conduct).

Sec. 153.10 (defining prohibited advertising for certain groups, including optometrists).

Sec. 153.11 (outlining criminal penalties for violation of this chapter).

Defendant board members contend that the legislature, in enacting sec. 153.08 (2), Stats., intended that the forms of unprofessional advertising there enumerated were to be considered unprofessional conduct, and therefore proper grounds for a revocation of license.

[8] *Josam Mfg. Co. v. State Board of Health* (1965), 26 Wis. 2d 587, 133 N. W. 2d 301.

Plaintiffs contend and the trial judge held that, if the legislature had so intended, it would have said so. Thus, since unprofessional advertising is not included in the subsection defining unprofessional conduct, the only remedy for a violation of sec. 153.08 (2), Stats., is to be found in sec. 153.11 dealing with criminal penalties; and not in sec. 153.07 dealing with revocations of license. So plaintiffs conclude that rule OPT 7.06 is invalid as being in excess of the authority of the board since rule OPT 7.06 defines unprofessional advertising to be unprofessional conduct and makes it subject to revocation of license proceedings.

An ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses.[9] To read the briefs here submitted, the arguments made and cases cited, is to conclude that there clearly are two alternative possible interpretations of the exact meaning of sec. 153.08 (2), Stats., and two interpretations as to whether the relevant statutes, read together, authorize a revocation of license as a consequence of engaging in unprofessional advertising. Where a statute or statutes are ambiguous, resort to matters outside the face of the statute is permitted, on occasion required, to determine the meaning thereof.[10] Such looking to materials outside the face of the statute in resolving an issue of statutory interpretation is primarily for the purpose of ascertaining the legislative intent.[11] Such legislative intent is to be sought:

". . . from the language of the statute in relation to its scope, history, context, subject matter, and the object

[9] *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 267, 128 N. W. 2d 425.

[10] *Weather-Tite Co. v. Lepper* (1964), 25 Wis. 2d 70, 130 N. W. 2d 198.

[11] *Heidersdorf v. State* (1958), 5 Wis. 2d 120, 123, 92 N. W. 2d 217.

intended to be remedied or accomplished [citation omitted] and when there are several statutes relating to the same subject matter they should be read together and harmonized, if possible . . . ." [12]

This is what must be done here.

The statute on unprofessional advertising, sec. 153.08 (2) was created by ch. 254, sec. 2, Laws of 1961. It was entitled: "An act to repeal and re-create 153.03 (4) and 153.08 of the statutes, relating to *unprofessional conduct* of optometrists, and the rule-making power of the board of examiners in optometry." (Emphasis supplied.)

Before this enactment, sec. 153.08, Stats., had merely defined unprofessional conduct in terms similar to the present sec. 153.08 (1), with no reference being made to unprofessional advertising.

Under the old statute the board had adopted a rule, OPT 9.08, which had defined unprofessional conduct as including certain types of advertising. (The only statutory authority for restrictions on advertising at that time, applicable to a class broader than licensed optometrists, was contained in sec. 153.10, Stats.)

When the board revoked a license of an optometrist for advertising in violation of rule OPT 9.08, its action was challenged and this court held the rule and the revocation to be beyond the statutory authority of the board. [13]

[12] *City of Milwaukee v. Milwaukee County* (1965), 27 Wis. 2d 53, 56, 133 N. W. 2d 393.

[13] "The inference is clear that if the legislature had intended to prohibit the type of advertising covered by the rules of the board it would have so stated in sec. 153.10, Stats., as it has done in sec. 152.06 with respect to unprofessional advertising by dentists. Rules of the state board of dental examiners with respect to unprofessional advertising were challenged in *Modern System Dentists v. State Board of Dental Examiners*, 216 Wis. 190, 256 N. W. 922. In that case certain rules promulgated by the board were held to be beyond its powers. Thereafter the statute was amended to include the subject matter attempted to be

Immediately after the court held that the optometry examining board could not revoke a license for unprofessional advertising, the legislature acted to change sec. 153.08, Stats. In its very next session, Bill No. 188, A., sec. 2 became ch. 254, sec. 2, Laws of 1961, and now exists as sec. 153.08 (2). The legislative note to this bill stated:

"NOTE: The definition suggested is drafted along the lines of somewhat similar provisions in the dental and chiropractic practice statutes. *The need for the proposed change was made apparent in the decision of the Wisconsin Supreme Court in the case of Stone v. Harris (1958) 6 Wis. (2) 634, 95 N. W. (2) 764,* where it was held that the present rule-making power of the board in the matter of regulation of advertising of optometrists is inadequate to authorize restrictions such as we are now suggesting by way of statute, for the reason that in another section of the optometry law, s. 153.10, there is a restriction on advertising which is applicable to anyone selling eyeglasses and that this must be deemed as the only restriction which the legislature wanted to apply regardless of whether the advertising be by a retail merchant, an optical dispenser (who is not required to be licensed) or a licensed optometrist. In other words, the licensed optometrist in the exercise of his calling is to be treated as any storekeeper in his advertising regardless of the fact that the practice of optometry has achieved professional status in the field of public health." (Emphasis supplied.)

The construction judicially given sec. 153.08, Stats., in the *Stone Case* had become a part of that statute. Only the legislature could change that construction.[14] That is exactly what the legislature set out to do and

regulated by board order. It was held in that case that it was not within the province of the board to add to the restrictions imposed by the legislature.

"The same rule is applicable here." *Stone v. Harris* (1959), 6 Wis. 2d 634, 636, 95 N. W. 2d 764.

[14] *Zimmerman v. Wisconsin Electric Power Co.* (1968), 38 Wis. 2d 626, 633, 157 N. W. 2d 648.

did in its enactment of the present sec. 153.08 (2). The legislative intent to override the judicial construction of the unprofessional conduct statute as not including unprofessional advertising is clearly stated in the legislative note. The intent to include unprofessional advertising as a form of unprofessional conduct is inescapable, particularly when the present sec. 153.08 (2) is compared to the rule OPT 9.08, struck down in the *Stone Case*. The principal provisions of the rule are in the re-created statute. The stated reason for the change in the law and the language of the enactment are more persuasive as to legislative intent than the rule of *expressio unius est exclusio alterius,* upon which the trial judge relied.

We hold that the intent of the legislature was that the forms of unprofessional advertising set forth in sec. 153.08 (2), Stats., were to be considered forms of unprofessional conduct as listed ". . . without limitation because of enumeration" in sec. 153.08 (1). It follows that the statutory authority for the enactment by the board of rule OPT 7.06 dealing with unprofessional advertising by optometrists is to be found in sec. 153.08 (2).

There remains the more specific question of whether any portion of rule OPT 7.06 goes beyond the rule-making authority of the board or exceeds the bounds of correct interpretation of the statute on which it is based.[15] Not only must board rules be not inconsistent with the statutes they seek to effectuate,[16] but, in the case of the defendant board, such rules are not to ". . . expand the practice of optometry or affect the practice of dispensing opticians . . . ."[17]

We reach now the question of whether a licensed optometrist, who is also a dispensing optician, may use both

[15] Sec. 227.014 (2), Stats.
[16] Sec. 15.08 (5), Stats.
[17] Sec. 153.03 (4), Stats.

titles on his stationery, on his office sign, or in his printed advertising.

Sec. 153.08 (2), Stats., defining "unprofessional advertising" in pertinent part, provides:

"(d) No optometrist shall display any sign or advertise by the use of any name other than the name under which he is licensed to practice optometry in this state . . . ."

"(e) . . . Such office signs may contain only the name of the duly licensed optometrists practicing therein, *their titles* and office hours . . . ." (Emphasis supplied.)

"(f) . . . Such printed advertisement may contain only the names of the duly licensed optometrists, *their titles,* office hours, location or place of practice, telephone numbers, and any one speciality." (Emphasis supplied.)

On the basis of these statutory provisions, the board included in rule OPT 7.06 the following prohibited advertising practices:

"(2) The use of stationery and professional cards containing other than the names, titles, office hours, location and telephone number.

"(3) The use by an optometrist, on his stationery, card or printed matter, of a multiple title. (*e.g.,* optometrist-optician . . .)"

"(6) The use of any advertising, by whatever media, containing other than the name of the duly licensed optometrist, his title, office hours, location or place of practice, telephone number, and any one speciality."

Do the quoted sections of the board's rule conform to the quoted sections of the statute, or do they go beyond them? Do the statutory provisions limit a licensed optometrist to displaying or advertising only his title as "Optometrist"? If he is also an unlicensed dispensing optician, may he display or advertise a dual title, "Optometrist-Optician"?

It was the opinion of the attorney general and it is the present position of the board that rule OPT 7.06 merely implements a statutory ban on the use of dual or multiple titles by a licensed optometrist. The statutory limiting of display signs and printed advertisements to "their titles" apparently does refer to the title of Optometrist only. The use of the plural "their titles" is grammatically required by the use of the plural "duly licensed optometrists" earlier in the same sentence. The pluralistic "their titles" relates back to the plurality of members of the licensed group, not to any plurality of titles they have or claim to have.

The attorney general and the board see no ambiguity in the meaning of this statutory limitation to displaying or advertising only one title, that of optometrist. If there is held to be such ambiguity, the legislative history of sec. 153.08 (2), Stats., earlier referred to in this opinion becomes material on the issue of legislative intent. On this point it must be conceded that the prohibition against use of a dual title was contained in the original rule OPT 9.08 that was before this court in the *Stone v. Harris Case.*[18]

There it reads:

"OPT 9.08 **Unprofessional practices.** The following practices, among others, constitute unprofessional conduct:

"(8) The use by an optometrist, on his stationery, card or printed matter of a dual title (*e.g., optometrist-optician;* jeweler-optometrist; etc. The illustrations are not meant to be exclusive)." (Emphasis supplied.)

When this court held that the board was without power to adopt rule OPT 9.08, it has been earlier stated in this opinion that the legislature promptly acted to overturn such judicial invalidation of rule OPT 9.08. It did so by enacting sec. 153.08 (2), Stats. A comparison of the language of the re-created sec. 153.08 (2) shows that it

[18] *Supra,* fn. 13.

includes the major provisions of the old rule OPT 9.08. So it can be argued, therefore, that the only logical inference to be drawn from this legislative history is that the legislature intended and did in fact not only make unprofessional advertising a form of unprofessional conduct, but did intend to include in⁶ unprofessional advertising the use of any and all dual or multiple titles by licensed optometrists. So the argument that specifically sections (2), (3) and (6) of rule OPT 7.06 are authorized by paragraphs (e) and (f) of sec. 153.08 (2) is a strong one.

However, at the same time that the legislature enacted sec. 153.08 (2), Stats., it added to the law a sharp and specific limitation on the general rule-making power of the board. This was section 1 of Assembly Bill 188. "An act to repeal and re-create *153.03 (4)* and 153.08 of the statutes, relating to unprofessional conduct of optometrists, *and the rule-making power of the board* of examiners in optometry." (Emphasis supplied.) When the bill became ch. 254, Laws of 1961, it not only re-created sec. 153.08 but substantially altered sec. 153.03 (4). To the previously existing general grant of authority to the board to ". . . make such rules not inconsistent with this chapter as it deems necessary for the administration of this chapter . . ." there was added this express limitation on rule-making power: "No such rule shall expand the practice of optometry *or affect the practice of a dispensing optician.*"

It is presumed that the legislature acted with full knowledge of the existing law, both the statute and the court decision interpreting it.[19] That presumption extends to and includes the rule of the administrative agency that was involved in *Stone v. Harris,* to wit: rule OPT 9.08. That rule not only prohibited the use by

[19] *Town of Madison v. City of Madison* (1955), 269 Wis. 609, 614, 70 N. W. 2d 249.

an optometrist ". . . on his stationery, card or printed matter, of a dual title" but gave two illustrations of the practice prohibited, ". . . *e.g.,* optometrist-optician; jeweler-optometrist."

The legislative insistence that no board rule affect, at least adversely, the practice of a dispensing optician has impact, not only on the rule-making power of the board, but also on what the legislature intended to include within its definition of unprofessional advertising. If this case involved the right of a licensed optometrist to advertise as a "jeweler-optometrist," we would find no exception created in the statute for such use of a dual title. If the board rule OPT 7.06 in sections (2), (3) and (6) applied to all dual or multiple titles except that of optometrist-optician, we would hold it to be a valid rule not inconsistent and in fact effectuating the statute on prohibited advertising. However, as applied to optometrist-opticians, does it not ". . . affect the practice of a dispensing optician?" If so, it is within the stated exception to the general rule.

It seems obvious to us that, if an optometrist, engaging in the work of a dispensing optician, cannot, even on his stationery and calling cards, mention the fact that he is also a dispensing optician, the effect of the prohibition is adverse on his practice as a dispensing optician. In its effect on such optometrists-opticians the rule in its present form definitely ". . . affects the practice of a dispensing optician." The statute does not and the board rules may not require one who is both optometrist and optician to select which of the two titles he will list on his stationery or office window. The syllabus or summary of the attorney general's opinion to the board states: "An optometrist may not list himself as an optician under one heading, and as an optometrist under another, in telephone directories [etc.]. . ." The board would not have the power to for-

bid an optometrist from practicing the skill and trade of a dispensing optician. As a practical matter, particularly in larger communities, it comes close to doing that when it by rule precludes an optometrist-optician from being listed in the classified or yellow pages section of the phone book as being both. A more adverse affecting of the practice of a dispensing optician is difficult to picture. In any event, the legislature has provided that no rule of the board may ". . . affect the practice of a dispensing optician." In its present form, the rule does just that. So, as applied to an optometrist who is also an optician, the majority would hold sections (2), (3) and (6) invalid and beyond the power of the board to enact or enforce.

We, therefore, excerpt from the judgment of the trial court those portions of OPT 7.06 (specifically secs. 2, 3 and 6) dealing with the dual status of optometrist-optician, and affirm the judgment holding said sections, as applied to optometrist-optician, invalid and in excess of the statutory authority of the board to enact or enforce rules.

All other sections of rule OPT 7.06 are found to be within the legislative authorization of ch. 153, and therefore within the board's rule-making power and the part of said judgment declaring them invalid is reversed.

*By the Court.*—Judgment affirmed in part; reversed in part.