FEINBERG and others, Appellants, v. HASLER and others, Respondents.

*No. 295.  Argued March 5, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 334.)

For the appellants there were briefs by *Stewart G. Honeck* of Milwaukee, and *John D. Winner* of Madison, attorneys, and *Honeck, Mantyh & Arndt* of Milwaukee, and *Jasper, Winner, McCallum & Sauthoff* of Madison, of counsel; and oral argument by *Stewart G. Honeck.*

For the respondents the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

A brief amicus curiae was filed by *Jack N. Eisendrath* of Milwaukee, for Wisconsin Consumer's League.

BEILFUSS, J. We start with a recognition that there is a significant distinction between an optometrist [1] and an optician.[2] As a generalization it can be said:

"... an optometrist is one who tests the strength and acuity of the eyes, and, based on his findings, makes a recommendation as to whether corrective lenses are needed and what type of lenses. A dispensing optician is one who fills the prescriptions for glasses by taking facial measurements and adjusting the frames, mountings and lenses prescribed. ..." [3]

[1] Sec. 449.01 (1), Stats.

[2] Sec. 449.01 (2), Stats.

[3] *Kindy v. Hayes* (1969), 44 Wis. 2d 301, 304, 171 N. W. 2d 324.

An optometrist must be licensed. Before he can be licensed he must pass an examination administered by the Optometry Examining Board and before he can take the examination he must have some basic educational and moral standards.[4] An optician is not licensed and is subjected to only a few special regulations.

Even though an optometrist must meet statutory standards before he can be licensed, optometry is not legally recognized in Wisconsin as one of the learned professions.[5] However, optometry is a highly skilled occupation requiring licensing, regulation and supervision.[6]

The Optometry Examining Board does have the authority to promulgate rules to regulate the practice of optometry[7] and unprofessional conduct of optometrists consistent with the statutes which regulate optometry.[8] Sec. 449.08, Stats., enumerates several kinds of practices declared by the legislature to be unprofessional. Among them is sec. 449.08 (2) (c), which provides:

"(2) Unprofessional advertising includes without limitation because of enumeration:
" . . .
"(c) Advertising by means of neon or flickering signs, or containing as a part thereof the representation of an eye or eyeglasses or any part thereof or contact lenses or any part of the human head."

In addition to this statutory prohibition, the Optometry Examining Board has adopted rule OPT 7.05 (6). OPT 7.05 is entitled: "Unprofessional practices" and provides:

"The following practices, among others, constitute unprofessional conduct:
" . . .

---

[4] Sec. 449.04, Stats.

[5] *State ex rel. Harris v. Kindy Optical Co.* (1940), 235 Wis. 498, 292 N. W. 283.

[6] *Kindy v. Hayes, supra.*

[7] Secs. 227.014 (2) (a) and 15.08 (5), Stats.

[8] *See* ch. 449, Stats.

"(6) The use or representation of eyes, or glasses, or show cases or window displays, or ophthalmic equipment as advertising."

It is the application of this rule that the plaintiffs-appellants challenge. Several plaintiffs joined in bringing this action.

The individual plaintiffs are licensed optometrists; they are also dispensing opticians. The several corporate plaintiffs are engaged in business as dispensing opticians and each of them hire one or more licensed optometrists as their employees. These corporations are large corporations whose stock is owned by persons from the public at large. The Quality Optical Service is a partnership and is in business as a dispensing optician. One of the partners is a licensed optometrist. The Stone Optical Company is a corporation but its capital stock is owned almost entirely by Sheldon Stone. Sheldon Stone is a licensed optometrist and is the "boss" of the corporation which does business as a dispensing optician.

The optometry board interpreted OPT 7.05 (6), *supra,* as prohibiting the use of window displays by persons who are licensed optometrists even though they may also be active dispensing opticians. In the case of the corporations and the partnerships who employ licensed optometrists, the board took the position that if the corporate or partnership opticians continued to use window displays the licensed optometrists would have to quit their employment or face disciplinary action.

It is this interpretation and application of the rule by the optometry board that the plaintiffs argue is arbitrary and capricious and in direct violation of an optometry regulatory statute.

The statute in question is sec. 449.03 (1) and is as follows:

"No rule made by the examining board shall expand the practice of optometry or affect the practice of dispensing opticians, nor shall the examining board enact rules which forbid the employment of an optometrist or declare such employment unprofessional conduct, or prohibit the operation of an optometric department by optometrists in a mercantile establishment."

The trial court, upon the undisputed fact that window displays of glasses, frames and the like were used, concluded as a matter of law:

"4. That OPT 7.05 (6) is a valid and constitutional rule in so far as it relates to optometrists who are not dispensing opticians or employees of dispensing opticians.

"5. That OPT 7.05 (6), in so far as it relates to optometrists who are also dispensing opticians or employees of corporations or partnerships engaged in the business of a dispensing optician, is a valid and constitutional rule under sec. 449.03 (1), Wis. Stats., because its prohibition against window displays does not have a substantial adverse effect on the optician dispensing business and does not forbid the employment of an optometrist by a dispensing optician."

The plaintiffs-appellants have narrowed the issue upon appeal. They state the issue to be:

"In light of Sec. 449.03 (1) Wis. Stats., which prohibits the Board of Examiners in Optometry from adopting a rule which
" 'affects the practice of dispensing optician,'

or which
" 'forbids the employment of an optometrist or declares such employment unprofessional conduct,'

may the Examining Board discipline a salaried optometrist in the employ of a corporate dispensing optician for alleged 'unprofessional conduct' under Rule OPT 7.05 (6) Wisconsin Administrative Code where (a) the optometrist-employee has no proprietary interest in the corporate optical dispensing business and where (b) the optometrist-employee has no control over the optical

dispensing employer's advertising program, and where the corporate optical dispensing company maintains a street-level window display of glasses and frames as it has traditionally done for more than fifty (50) years last past?"

We will confine this opinion to the conditions set forth in the issue as stated by the plaintiffs-appellants. We realize that this disposition of the case may leave problems unanswered as it affects the licensed optometrist who is also an active dispensing optician, a partnership where a licensed optometrist has a dominant or substantial voice in the dispensing optician phase of the business, and those optician corporations which are wholly or substantially owned and dominated by licensed optometrists. Also undecided are constitutional questions of equal protection. We feel constrained to do this because the briefs and arguments of both the appellants and the respondents are limited to the issue as stated.

In *State ex rel. Harris v. Kindy Optical Co., supra,* this court recognized the right of a corporation to employ licensed optometrists. As a further protection to the dispensing optician, the legislature enacted sec. 449.03 (1), Stats. (quoted above) which restricts the rule-making power of the Optometry Examining Board.

A dispensing optician does have a right to use window displays consisting of representations of eyes, glasses and frames as a form of legitimate advertising. A dispensing optician also has the right to employ a licensed optometrist. The licensed optometrist must identify himself by name at a conspicuous place at the entrance to his office and display his certificate of registration.[9]

Dr. Robert LeVitus, an employee of the Kindy Optical Company, is one of the licensed optometrists called before the Optometry Examining Board. As a part of the stipulated facts, the following appears:

---

[9] Sec. 449.06 (2), Stats.

"Dr. LeVitus told the Board that he did work part-time at the Milwaukee store and part-time in his own shop at Sun Prairie. The Board then told him that the Milwaukee store of Kindy was also in violation of the statutes and code and unless Kindy changed its display, he would be subjected to disciplinary action. He told the Board that he was employed to conduct eye examinations and had no part in the sale of glasses or frames and no control over the displays. He said that he would request Kindy to change its displays, but if they refused, he did not feel that he could continue working for Kindy because he did not wish to jeopardize his license.

"The Board gave him until April 10, 1971, to advise them whether or not Kindy would comply with their demands to change the displays at both the Waukesha and Milwaukee stores. If they refused to do so, he would be charged with a violation and brought before the Board for disciplinary action."

Dr. LeVitus' name, identifying him as an optometrist, appears on the outside door of the Kindy Optical Company place of business in Milwaukee and he has his own private office within the store. Kindy did use the questioned window displays.

Alvin Moore, an executive of Kindy, testified that if you cannot display frames for glasses so that they are visible from the street it would have an adverse effect upon its business from a competitive standpoint. This testimony is unchallenged.

Under sec. 449.03 (1), Stats., the board is prohibited from enacting rules which affect the practice of dispensing opticians or forbidding the employment of an optometrist or declaring such employment unprofessional conduct.

Contrary to the conclusion of law of the trial court, it is our opinion that when the board, in application of its rule prohibiting the defined window displays, threatened to impose disciplinary action against Dr. LeVitus unless his employer Kindy, a dispensing optician, discontinued the window displays, it did substantially af-

fect the practice of a dispensing optician. Kindy is faced with losing one of two recognized and valuable rights. Kindy, as a dispensing optician, has the right to use the questioned window displays; it also has the right to employ a licensed optometrist. Under the rule as applied by the board Kindy must give up one of these rights.

Without question the legislature has the authority to reasonably regulate the practice of optometry and the board has the right and the duty to enforce those regulations, including its statutory rule-making power. It is also fundamental that the board cannot act in excess of or in violation of the legislative mandate.

It is our opinion that the application and enforcement of OPT 7.05 (6), as threatened by the board, is in violation of sec. 449.03 (1), Stats., and therefore void in the limited instances where the optometrist-employee has no proprietary interest in the corporate optical dispensing business of his employer and the optometrist-employee has no control over the optical dispensing employer's advertising program.

We are mindful of the cases cited by counsel and the trial court from other jurisdictions. We are also impressed with their rationale. However, we deem them to be inapposite because none of those jurisdictions have statutes which extend similar broad protection to dispensing opticians.

We must also distinguish or limit our decision in *Kindy v. Hayes, supra.* As noted by the trial court, sec. 7 of then OPT 7.06 is identical to the renumbered and now sec. 6 of OPT 7.05. OPT 7.06 then and OPT 7.05 now list several unprofessional practices as they apply to optometrists. In *Kindy v. Hayes* the issues did not deal with prohibited window displays but with advertising in telephone directories by optometrists in the dual capacity of optometrists-opticians. The rules by the board prohibiting such

advertising were held to be invalid. The opinion went on, however, to state at page 316:

"All other sections of rule OPT 7.06 are found to be within the legislative authorization of ch. 153 [now ch. 449], and therefore within the board's rule-making power and the part of said [trial court] judgment declaring them invalid is reversed."

Because the issues in *Kindy v. Hayes, supra,* did not deal with window displays, and for the reasons set forth above, the implication of *Kindy v. Hayes* that the board rule OPT 7.05 (6) is valid is withdrawn insofar as it applies to the facts and issues herein.

The declaratory judgment which validates the board rule OPT 7.05 (6) must be modified insofar as it applies to optometrists who are optometrists-employees having no proprietary interest in corporate optical dispensing businesses and where the optometrists-employees have no control over the optical dispensing employers' advertising program. The threatened application of the rules as to those optometrists is invalid and the board should be restrained from enforcing it. In all other respects the judgment is affirmed.

*By the Court.*—Judgment modified and, as modified, affirmed.