L.P. VOIGT, Secretary, Department of Natural Resources
You ask whether ch. 218, sec. 42, Laws of 1973, which substitutes civil forfeiture sanctions for criminal sanctions for certain violations of ch. 350, Stats., regulating the use of snowmobiles, has the effect of denying conservation wardens the power to arrest for snowmobile violations notwithstanding sec. 29.05 (1), Stats.
Section 29.05 (1), Stats., provides, in material part, as follows:
 ". . . [A conservation warden] may arrest, with or without a warrant, any person detected in the actual violation, or whom such officer has reasonable cause to believe guilty of a violation under . . . ch. 350, except where applicable to highways, and may take such person before any court in the county where the offense was committed and make proper complaint." *Page 167 
In my opinion, the arrest power conferred by sec. 29.05 (1), Stats., is undisturbed by the decriminalization of ch. 350.
The enactment of ch. 218, sec. 42, Laws of 1973, which (with the exception of sec. 350.07) decriminalized violations of ch. 350, is presumed to have been done with full knowledge of the existing law, including knowledge of sec. 29.05 (1), Stats. Kindyv. Hayes (1969), 44 Wis.2d 301, 314, 171 N.W.2d 324. Had the legislature intended to preclude arrest by wardens for violations of ch. 350, it would have amended sec. 29.05 (1), Stats., to eliminate the power of arrest at the same time that it decriminalized violations of ch. 350. There is nothing in the legislative history of the recent changes in ch. 350 to suggest that the legislature intended to repeal or to amend sec. 29.05 (1), Stats., and a repeal by implication is disfavored if the two sections of the statutes can be reconciled. Jicha v. Karns
(1968), 39 Wis.2d 676, 680, 159 N.W.2d 691.
The decriminalization of ch. 350 and the arrest powers granted to conservation wardens under sec. 29.05 (1), Stats., are not irreconcilable. There is nothing in the language of sec. 29.05 (1), Stats., to indicate that the exercise of the arrest power is confined to criminal conduct, nor is the use of arrest power in civil actions unprecedented. See e.g. sec. 264.02 (arrest in civil actions); secs. 345.21, 345.22, 83.016 (1) (arrest for violations of traffic regulations); sec. 62.09 (13) (city police authorized to arrest for violation of any state law); sec. 61.28
(village marshal authorized to arrest for violation of any state law). Thus, while it is true that an arrest under the criminal code can be made only for criminal conduct (see, sec. 968.07, Stats.), a valid arrest of a person for noncriminal conduct is authorized under other statutes, including sec. 29.05 (1), Stats.
The power to arrest for noncriminal violations also has been judicially recognized. In Madison v. Geier (1965), 27 Wis.2d 687,692, 135 N.W.2d 761, the court observed:
 ". . . We recently pointed out in Milwaukee v. Wuky
(1965), 26 Wis. (2d) 555, 133 N.W.2d 356, such forfeiture cases at best are in fact a hybrid proceeding — one has no right to a special verdict; pleas of guilty, of not guilty, or of nolo contendere are made instead of an answer; the *Page 168 action is commenced by warrant or summons; and one may be arrested and bail provisions apply." (Emphasis added.)
In State ex rel. White v. Simpson (1965), 28 Wis.2d 590,137 N.W.2d 391, a noncriminal paternity action, the court held that constitutional limitations on arrest and search apply, notwithstanding the civil nature of the proceedings.
You ask further whether a conservation warden may stop a snowmobiler for temporary questioning when the warden reasonably suspects that such person has violated a section of ch. 350, and, if so, whether a warden may conduct a limited weapons search of a person he has stopped for temporary questioning when he reasonably suspects that he or another is in danger of physical injury.
Section 29.05 (1), Stats., expressly authorizes a conservation warden, "for the purpose of enforcing . . . ch. 350, except where applicable to highways, . . . [to] stop any snowmobile, if he has reasonable cause to believe there is a violation of such sections." Furthermore, a snowmobiler has an absolute duty to stop when requested to do so by a warden, sec 350.17 (2), Stats. After the stop has been effected, it would logically follow that the warden could make such inquiry as would be necessary to ascertain whether cause for arrest existed.
Once the authority to make the original stop has been established, it necessarily follows that under appropriate circumstances, the right to conduct a limited weapon search may also be established. As stated by the United States Supreme Court in Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868,20 L.Ed. 2d 889, if an officer entitled to make a stop has reason to believe that the suspect is armed and dangerous, he is also entitled to conduct a weapons search limited in purpose to protecting himself or others against injury from the person stopped.
Although the stop in Terry was made for the purpose of investigating possible criminal behavior, the reasons the Court suggests for allowing a limited weapons search apply equally well to a stop which is made for the purpose of investigating noncriminal violations of the law. Support for this position is implicit in Milwaukee v. Cohen (1973), 57 Wis.2d 38, 46,203 N.W.2d 633, where the court held that Fourth Amendment *Page 169 
standards apply to civil as well as criminal cases. Remedies for the abuse of a power imply the existence of that power.
A search need not be expressly authorized by statute, but need only meet the Fourth Amendment standard of reasonableness. The nature of the sanction the suspect may ultimately incur does not determine the reasonableness of a search, but rather the reasonableness of the search must be determined in light of the surrounding circumstances. A limited weapon search of a person stopped for temporary questioning in a remote area might be reasonable if the officer making the stop has cause to believe that he or another is in danger of physical injury. It would be unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. Terry v.Ohio, 392 U.S. at 24.
In contrast to the treatment of the subject in other chapters of the statutes, there is no provision in ch. 350 addressing the subject of the action to be taken by a conservation warden following the arrest of a person for a noncriminal violation of ch. 350. In the absence thereof, it is my opinion that the power to arrest for noncriminal violations of ch. 350 includes, under appropriate circumstances, the power to require the deposit of security sufficient to guarantee payment of any forfeiture which may be imposed. Consistent with the Motor Vehicle Code, see sec.345.06 (2) (a), Stats., and other statutes dealing with arrests for civil forfeitures, maximum use should be made of fixed deposit schedules and arrangements should be made to facilitate the deposit of security through the use of checks and credit cards in lieu of cash. Any and all steps necessary to minimize the circumstances under which detention would be necessary must be taken.
BCL:DJH