**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 14, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2066**

STATE OF WISCONSIN

Cir. Ct. No. 2021JV1057

IN COURT OF APPEALS
DISTRICT I

IN THE INTEREST OF J.A.J., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

     PETITIONER-RESPONDENT,

  V.

J.A.J.,

     RESPONDENT-APPELLANT.

 

APPEAL from orders of the circuit court for Milwaukee County: AUDREY K. SKWIERAWSKI, Judge. *Affirmed*.

¶1 GEENEN, J.[1] J.A.J., a juvenile adjudicated delinquent and placed in the Serious Juvenile Offender Program (SJOP), raises two issues in his appeal.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

The first issue, one of first impression for this court, is whether the circuit court erred when it entered a dispositional order under WIS. STAT. ch. 938, the Juvenile Justice Code, ordering J.A.J. into the SJOP with placement at Lincoln Hills School, a Type 1 secure juvenile correctional facility operated by the Department of Corrections (DOC),[2] in light of statutory amendments to ch. 938 in 2017 Wis. Act 185 (2017 Act) and 2019 Wis. Act 8 (2019 Act). These Acts made changes to the dispositional options for the secured confinement of juveniles adjudicated delinquent and provided that Lincoln Hills be closed by July 1, 2021. The second issue is whether the circuit court erred when it ordered restitution based on the victim's testimony of the value of the items for which restitution was sought rather than require receipts or other documentary proof of value.

¶2    This court holds that the amendments to WIS. STAT. ch. 938 contained in the 2017 and 2019 Acts do not prohibit circuit courts from entering dispositional orders placing juveniles adjudicated delinquent into the SJOP with placement at a Type 1 juvenile correctional facility where the court has determined that the criteria in WIS. STAT. § 938.34(4m) apply. This court further concludes that, where the circuit court has determined that an SJOP placement is appropriate and it determines that secured correctional confinement is necessary, it is not prohibited from ordering placement at Lincoln Hills. We also affirm the circuit court's restitution order.

---

[2] The DOC operates two Type 1 secure juvenile correctional facilities: Lincoln Hills School for boys, and Copper Lake School for girls. There is only one other Type 1 facility in Wisconsin, Mendota Juvenile Treatment Center at the Mendota Mental Health Institute, which is a Type 1 *secure mental health treatment facility* operated by the Department of Health Services, and which is not a juvenile correctional facility as defined by WIS. STAT. § 16.99(3b).

BACKGROUND

¶3      On November 17, 2021, the State filed a delinquency petition charging J.A.J. with three counts of armed robbery—party to a crime (PTAC), three counts of fraudulent use of a financial transaction card—PTAC, one count of operating a motor vehicle without owner's consent—PTAC, and one count of violation of a nonsecure custody order.

¶4      The delinquency petition was based on a series of events occurring between October 19 and November 8, 2021.  At the plea hearing on February 23, 2022, J.A.J. entered admissions to one count each of armed robbery—PTAC, fraudulent use of a financial transaction card—PTAC, and operating a motor vehicle without owner's consent—PTAC.  The remaining counts were dismissed and read in.  On March 31, 2022, the circuit court entered a dispositional order placing J.A.J. in the SJOP for five years with placement at Lincoln Hills.

¶5      On May 20, 2022, the circuit court held a restitution hearing.  Victim J.S. testified at that hearing and his written impact statement was admitted into evidence.  It listed the items for which restitution were sought (AirPods, LED lights, a shammy, a wallet, and J.S.'s driver's license) and their values, amounting to $375.  On May 26, 2022, the circuit court entered an order that, among other things unrelated to this appeal, ordered restitution to J.S. in the amount of $375 based on J.S.'s testimony.

¶6      On November 28, 2022, J.A.J. filed a notice of appeal challenging both the March 31, 2022 and May, 26, 2022 orders.

¶7      For the following reasons, this court affirms both orders.

**DISCUSSION**

¶8 J.A.J. raises two issues on appeal. First, J.A.J. challenges the circuit court's ability to enter a dispositional order that places him at a Type 1 secured juvenile correctional facility, generally, and Lincoln Hills, specifically, in light of the 2017 and 2019 Acts' amendments to WIS. STAT. § 938.34(4m) and the nonstatutory provisions that directed Lincoln Hills to close by July 1, 2021. This issue is one of statutory interpretation, a question of law that this court reviews *de novo*. *State v. Gramza*, 2020 WI App 81, ¶15, 395 Wis. 2d 215, 952 N.W.2d 836.

¶9 Second, J.A.J. challenges the evidentiary basis supporting the circuit court's restitution order, arguing that the evidence of the value of the items was insufficient, and that the circuit court should have required receipts or other documentary proof of value. The circuit court's factual findings related to the value of the items will not be set aside unless they are "clearly erroneous," that is, "when the finding is against the great weight and clear preponderance of evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶¶11-12, 290 Wis. 2d 264, 714 N.W.2d 530.

## I.     Juvenile Justice Code

¶10 The Juvenile Justice Code, WIS. STAT. ch. 938, creates the framework for addressing juvenile delinquency, protecting the rights of citizens, imposing accountability for violations of the law, and equipping juvenile offenders with tools to live responsibly and productively. *See* WIS. STAT. § 938.01(2). The legislature, in enacting ch. 938, intended to "respond to a juvenile offender's needs for care and treatment, consistent with the prevention of delinquency, each juvenile's best interest and the protection of the public," by allowing circuit courts to utilize the most effective dispositional option. Sec. 938.01(2).

¶11     Therefore, after a juvenile is adjudicated delinquent, a circuit court enters a dispositional order that specifies the juvenile's placement and treatment based on the evidence submitted and consistent with the goals of the Juvenile Justice Code. WIS. STAT. § 938.355(1). The statute instructs the court to decide dispositions based on the seriousness of the offense and any read-in delinquent acts. WIS. STAT. § 938.34. Dispositions include, among other things, counseling, supervision, probation programs, intensive supervision, electronic monitoring, Type 2 residential care centers, the SJOP, or correctional placement. *Id.* Secure placement in a juvenile correctional facility or a county-supervised secured residential care center for children and youth (SRCCCY) is presumptively appropriate for juveniles adjudicated delinquent for certain acts that would be one of the enumerated felonies if committed by an adult and satisfy other statutory criteria. WIS. STAT. §§ 938.34(4h)-(4m), 938.355(1), 938.538.

### a. Pre-Amendment Dispositional Placement Under WIS. STAT. § 938.34 and Post-Amendment Changes

¶12     WISCONSIN STAT. § 938.34 provides the possible dispositions a circuit court may order for juveniles adjudicated delinquent. This case considers two separate dispositional options, WIS. STAT. § 938.34(4h), placement in the SJOP, and § 938.34(4m), correctional placement.

¶13     Before placing a juvenile adjudicated delinquent in the SJOP, the circuit court, among other things, must find "that the only other disposition that is appropriate for the juvenile is placement in a juvenile correctional facility under [WIS. STAT. § 938.34](4m)." WIS. STAT. § 938.34(4h)(b). Prior to the 2017 and 2019 Acts, § 938.34 permitted dispositional orders to "[p]lace the juvenile in a juvenile correctional facility," which included Lincoln Hills and Copper Lake, if the circuit court made the required findings under § 938.34(4m)(a)-(b) (2015-16).

5

As a result, a circuit court entering a disposition under sub. (4h) could also unquestionably order placement at Lincoln Hills once the court made the findings required by sub. (4m).

¶14 In 2018, the legislature passed 2017 Wisconsin Act 185 which made changes to the Juvenile Justice Code and the administration of the juvenile justice system in Wisconsin. Among other things, it provided for the creation of county-supervised SRCCCYs, directed the closure of Lincoln Hills and Copper Lake, and required the establishment of a new DOC-supervised Type 1 juvenile correctional facility by no later than January 1, 2021. The 2019 Act made some additional, mostly minor changes, to facilitate the implementation and goals of the 2017 Act, and it amended the deadline to close Lincoln Hills and Copper Lake to July 1, 2021.

¶15 The Acts made no changes to the SJOP dispositional option at WIS. STAT. § 938.34(4h). Section 62 of the 2017 Act, however, eliminated reference to "juvenile correctional facilit[ies]" in § 938.34(4m). As a result, while still titled "Correctional Placement," § 938.34(4m) now reads: "Place the juvenile under the supervision of the county department in a [SRCCCY] identified by the county department[.]" Although that statute now unambiguously requires initial placement at an SRCCCY, section 66 of the Act created a procedure by which a juvenile's placement may be changed at WIS. STAT. § 938.357(3)(b), which provides: "Notwithstanding [§ ]938.34(4m) and subject to par. (c), the court may order placement in a Type 1 juvenile correctional facility operated by the [DOC] for a juvenile who was adjudicated delinquent under s. 938.34(4m) if the court finds, after a hearing under this section, that" the county does not have space for the juvenile in its SRCCCY or that other statutorily prescribed conditions apply.

¶16    The 2017 Act also changed the definition of "juvenile correctional facility."    Before the 2017 Act, WIS. STAT. § 16.99(3b) (2015-16), defined "[j]uvenile correctional facility" to mean "the Copper Lake School and the Lincoln Hills School."  The 2017 Act eliminated the specific references to Copper Lake and Lincoln Hills; § 16.99(3b) now reads:  "'Juvenile correctional facility' means a Type 1 juvenile correctional facility, as defined in [WIS. STAT. §] 938.02 (19)[.]"  *See* 2017 Wis. Act 185, § 4.  Despite the change, Copper Lake and Lincoln Hills remain "Type 1 juvenile correctional facilit[ies]" and "juvenile correctional facility[ies]" because they are operated or contracted for by DOC for holding in secure custody juveniles adjudged delinquent.  Sec. 938.02(10p), (19).

¶17    The 2017 Act contemplated transferring juveniles currently placed at Lincoln Hills and Copper Lake to county-supervised SRCCCYs or other Type 1 juvenile correctional facilities as part of the closure process.  In nonstatutory provisions of the 2017 Act, the legislature provided:

> "On the earlier of the date on which all juveniles have been transferred to [SRCCCY] and Type 1 juvenile correctional facilities under subsection (1) or January 1, 2021, the [DOC] shall permanently close the Type 1 juvenile correctional facilities housed at the Lincoln Hills School and Copper Lake School in the town of Birch, Lincoln County."

2017 Wis. Act 185, § 110(2)(a).  Subsection (1), relating to the transfers, provided that "[n]o juvenile may be transferred to a Type 1 juvenile correctional facility until the [DOC] determines the facility to be ready to accept juveniles, and no juvenile may be transferred to a [SRCCCY] until the entity operating the facility determines it to be ready to accept juveniles," with the transfer of all juveniles to occur no later than January 1, 2021.  2017 Wis. Act 185, § 110(1)(a).  Section 110(7) required that DOC establish or construct a new Type 1 juvenile

correctional facility by January 1, 2021, to correspond with the closure and transfer deadlines. Sections 61, 62, and 68 of the 2019 Act extended the respective deadlines to July 1, 2021.

¶18   The deadline to close Lincoln Hills and Copper Lake was not further extended and has passed. It is generally known within this court's jurisdiction and the parties agree that, as of the date of this opinion, Lincoln Hills and Copper Lake remain open and are the only DOC-operated Type 1 juvenile correctional facilities in Wisconsin. Since July 1, 2021, the state legislature has appropriated and continues to appropriate funds for improvements, operation, and the care of juveniles placed at existing Type 1 juvenile correctional facilities, and for the planning and construction of new facilities, including SRCCCYs. *See, e.g.*, 2021 Wis. Act 58, §§ 109, 199, 388-89; 2021 Wis. Act 252; 2023 Wis. Act 19 §§ 51, 242-243, 454g, 9104(5). No SRCCCY or replacement Type 1 juvenile correctional facility has been built.[3]

### b.  J.A.J.'s Challenge

### i.  Statutory Interpretation

¶19   Before a court can place a juvenile in the SJOP, it must find that the juvenile is at least fourteen years old, has been adjudicated delinquent for committing certain statutorily prescribed violations, and "that the only other disposition that is appropriate for the juvenile is placement in a *juvenile correctional facility under sub. (4m)*." WIS. STAT. § 938.34(4h) (emphasis added).

---

[3] A judicially noticed fact must be "(a) A fact generally known within the territorial jurisdiction of the trial court" or "(b) A fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." WIS. STAT. § 902.01(2).

There is no dispute that J.A.J. was at least fourteen years old when he was adjudicated delinquent for at least one of the statutorily enumerated violations or that the circuit court concluded that the only appropriate placement was in a secured facility.

¶20 At the dispositional hearing, the circuit court considered the meaning of Wis. Stat. § 938.34(4h), specifically, the phrase "placement in a juvenile correctional facility under sub. (4m)," in light of the fact that, due to the amendments, sub. (4m) no longer permits placement in or even refers to a "juvenile correctional facility," and the only available initial placement under sub. (4m) is in a county-operated SRCCCY. J.A.J. argued that placement in the SJOP was an impossibility because an SJOP placement requires the court to first find that the only other appropriate "placement [is] in a juvenile correctional facility under sub. (4m)," when sub. (4m) does not allow placement in a juvenile correctional facility. According to J.A.J., this language prevents circuit courts from ever making the finding required to enter an SJOP disposition. The circuit court disagreed and concluded that the SJOP remained a permissible disposition.

¶21 J.A.J. appears to abandon this argument on appeal, instead arguing that, because the 2017 Act eliminated the reference to "juvenile correctional facilit[ies]" in Wis. Stat. § 938.34(4m), the only appropriate placement for a juvenile placed in the SJOP is in an SRCCCY. He further contends that, even if placement in a Type 1 juvenile correctional facility was permitted, J.A.J. could not be placed at Lincoln Hills, in particular, because it is supposed to be closed. J.A.J. concludes that there is currently no secured facility at which a court can place juveniles adjudicated delinquent for serious crimes because no SRCCCYs and no Type 1 juvenile correctional facilities other than Lincoln Hills or Copper Lake exist. J.A.J. does *not* contend on appeal that the circuit court was without

9

authority to enter a dispositional order under sub. (4h), placing him in the SJOP. Nevertheless, J.A.J. seeks the reversal of the circuit court's dispositional order placing him at Lincoln Hills.

¶22 The effects of the 2017 and 2019 Acts on WIS. STAT. § 938.34(4h) and (4m) are an issue of statutory interpretation. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the language of the statute because it is "assume[d] that the legislature's intent is expressed in the statutory language." *Id.* Statutory language is given its common, ordinary meaning, and if the meaning of the statute is plain, the inquiry ordinarily stops. *Id.* at ¶45.

¶23 Statutory language is not, however, interpreted in isolation. "Statutory interpretation centers on the 'ascertainment of meaning,' not the recitation of words in isolation." *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶13, 400 Wis. 2d 417, 970 N.W.2d 1. The context and structure of the statute in which the operative language appears are important to its meaning. *Kalal*, 271 Wis. 2d 633, ¶46. Thus, "statutory language is interpreted in the context in which it is used; not in isolation, but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* This means that "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.* "Properly applied, the plain-meaning approach is not 'literalistic;' rather, the ascertainment of meaning involves a 'process of analysis' focused on deriving the fair meaning of the text itself. *Brey v. State Farm Mut. Auto. Ins. Co*., 2022 WI 7, ¶11 (citing *Kalal*, 271 Wis. 2d 633, ¶¶46, 52).

¶24    The circuit court found that the statutory language was ambiguous. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses; it is ambiguous if the language is reasonably and objectively confusing. *See Kalal*, 271 Wis. 2d 633, ¶47. If the statute is ambiguous, the court may rely on extrinsic sources to ascertain its meaning. *Id.* at ¶50.

### c. WISCONSIN STAT. § 938.34(4m) is not a "correctional placement authorized under" the SJOP.

¶25    J.A.J.'s contention that the only correctional placement authorized under the SJOP disposition (i.e., WIS. STAT. § 938.34(4h)) was under § 938.34(4m) (i.e., in an SRCCCY), misreads the statute. Subsection (4h) is a separate dispositional option from sub. (4m). Subsection (4h) was not repealed or amended. Subsection (4h) does not require a physical placement under sub. (4m) or in an SRCCCY or any physical placement at all. It requires only a finding that, if the court does not enter a dispositional order for the SJOP, the only other appropriate option is mandatory secured confinement pursuant to a dispositional order under sub. (4m).[4] Subsection (4h)(b)'s use of the word "other" with respect to the sub. (4m) finding is further confirmation that the two dispositions are distinct from one another.

¶26    Additionally, WIS. STAT. § 938.538 governs the administration of the SJOP and was not amended or repealed by the Acts. Specifically, WIS. STAT. § 938.538(3a) controls the correctional options available when a juvenile is placed

---

[4] The circuit court correctly reconciled the apparent tension between the two provisions by explaining that, to enter a disposition order under sub. (4h), it must find that the only other appropriate placement is under sub. (4m), which requires that the court find that both sub. (4m)(a)-(b) apply.

11

in the SJOP, and those options include placement in a Type 1 juvenile correctional facility or in a SRCCCY. J.A.J.'s contention that the amendments limited the correctional options available under the SJOP to county-operated SRCCCYs renders sections of the statutes surplusage and ignores the fact that the legislature left the SJOP fully intact. The lack of amendment to the SJOP statutes is indicative of the legislature's intent to keep the SJOP and all of its placement options available to circuit courts.[5]

¶27    No reasonable interpretation of the amended statute, WIS. STAT. § 938.34(4m), results in the conclusion J.A.J. offers. Subsection (4h) cannot be read to require a placement under sub. (4m), or only in an SRCCCY. The only reasonable interpretation is that subs. (4h) and (4m) are separate dispositional options and that, once a juvenile is ordered into the SJOP, physical placement options are controlled by WIS. STAT. § 938.538.

### d. DOC's Failure to Meet the Nonstatutory Closure Deadlines for Lincoln Hills does not make J.A.J.'s Placement at Lincoln Hills Unlawful.

¶28    J.A.J. also argues that it is unlawful for circuit courts to continue placing juveniles at Lincoln Hills, via the SJOP or otherwise, because under

---

[5] There is no question that the Acts left the SJOP statutes untouched. Nonetheless, it is noteworthy that the Wisconsin Legislative Council Memo regarding the 2017 Act specified that "DOC maintains supervision over ... juveniles in the SJOP [under the 2017 Act], but the supervision of juveniles under other correctional placements is transferred to the counties." 2017 Wis. Act 185, Wisconsin Legislative Council Memo at 6; *see also* **Teschendorf v. State Farm Ins. Companies**, 2006 WI 89, ¶14, 293 Wis. 2d 123, 717 N.W.2d 258 (courts may look to legislative history to confirm a plain meaning interpretation).

nonstatutory provisions of the 2017 and 2019 Acts, the school was to close by July 1, 2021, at the latest.[6]

¶29    Nonstatutory provisions are not codified in the statutes. They are typically enactments of limited application or duration or both. They include declarations of intent or purpose, laws that are temporary or limited in duration, and provisions affecting the timing of a law's application or non-application, among other things. WISCONSIN STATE SENATE AND ASSEMBLY JOINT R. 53(2). Whether nonstatutory provisions have the force of law is not clearly settled and depends on the specific provision. *Compare **RURAL v. Public Serv. Comm'n of Wis.**, 2000 WI 129, 239 Wis. 2d 660, 619 N.W.2d 888 (treating nonstatutory provisions of 1997 Wis. Act 204 as binding when analyzing PSC and DNR compliance with the expedited review process for a certificate of public convenience and necessity contained therein) *with **Kalal**, 271 Wis. 2d 633, ¶¶65, 69 (Abrahmson, C.J., concurring) (suggesting that nonstatutory provisions qualify as a type of "legislative history").

¶30    J.A.J. urges this court to interpret the legislative enactments providing for the closure of Lincoln Hills and Copper Lake. Whether binding authority or not, the nonstatutory provision arises out of a legislative enactment, and J.A.J. tasks this court with determining the legislature's intent with regard to such enactment. We thus consider the nonstatutory provisions in the same manner as a statute and in the context of the whole enactment and applicable statutory framework.

---

[6] We note that while the State identified this argument in its brief, it did not meaningfully engage the argument. The State argues that the "change of placement" statute, WIS. STAT. § 938.357, somehow rebuts J.A.J.'s argument with respect to the closure deadlines in the Acts. It does not. Nonetheless, we do not deem the issue conceded. Instead, we analyze J.A.J.'s closure deadline argument and ultimately reject it on other grounds.

¶31 It is undisputed that Lincoln Hills and Copper Lake continue to operate, and that circuit courts continue to enter dispositional orders under sub. (4h) placing juveniles, including J.A.J., in the SJOP with physical placement at those facilities. J.A.J. argues that on July 2, 2021, it became unlawful for Lincoln Hills and Copper Lake to continue operating, and it likewise became unlawful for circuit courts to enter dispositional orders that placed juveniles in the SJOP if it resulted in a placement at Lincoln Hills or Copper Lake. We reject J.A.J.'s argument.

¶32 The 2017 and 2019 Acts contemplate (1) the construction of SRCCCYs and new Type 1 juvenile correctional facilities to be operational on or before July 1, 2021, so that (2) the juveniles currently at Lincoln Hills and Copper Lake can be transferred to the new facilities on or before July 1, 2021, so that (3) Lincoln Hills and Copper Lake could be closed on or before July 1, 2021. The Acts did not alter, waive, or change the requirement in WIS. STAT. § 938.34 that the court's dispositional placement account for and meet the juvenile offender's and the public's needs. WIS. STAT. § 938.355(1).

¶33 Furthermore, a legislature makes laws that establish the policy of the state. *Madison Teachers, Inc. v. Walker,* 2014 WI 99, ¶138, 358 Wis. 2d 1, 851 N.W.2d 337 (citing *National R. Passenger Corp. v. Atchison, T. & S.F.R. Co.*, 470 U.S. 451, 466, (1985)). Therefore, a legislative enactment is presumed not to create "contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Id*. (internal quotation marks omitted). Neither the 2017 nor the 2019 Act contains a remedy for noncompliance with the nonstatutory closure deadlines. They do not create a private right of action for J.A.J. or anyone else. The lack of any enforcement mechanism suggests that the

deadlines were aspirational policies and not intended to prohibit placements at Lincoln Hills or Copper Lake if the deadlines were not met.

¶34 Although Lincoln Hills and Copper Lake were ordered closed by the legislature, these facilities continue to be the only Type 1 juvenile correctional facilities in Wisconsin. There are no SRCCCYs currently in operation. If J.A.J.'s argument was adopted, Wisconsin's most serious juvenile offenders, juveniles for whom the circuit court determines secured confinement in a SRCCCY or Type 1 juvenile correctional facility is appropriate, would instead receive a significantly less restrictive disposition than what the circuit court found was warranted by the evidence. This result runs directly contrary to WIS. STAT. § 938.01(2), wherein the legislature declared all seven purposes of the Juvenile Justice Code to be "equally important," and made repeated reference throughout to the "protect[ion of] citizens from juvenile crime" and the "protection of the public." J.A.J.'s approach would eviscerate the circuit court's duty to faithfully consider and effectuate the intent of the legislature if it is unable to place juveniles adjudicated delinquent of acts that would be the most serious felonies if committed by an adult in a secured facility.

¶35 This court's conclusion that circuit courts may continue to order placement at Lincoln Hills and Copper Lake is further supported by the legislature's 2021-23 budget, 2021 Wis. Act 58. This budget, enacted on July 8, 2021, continued to appropriate funds for existing Type 1 juvenile correctional facilities (i.e., Lincoln Hills and Copper Lake) and for the construction of new ones. The budget also increased "the per-person daily cost assessment to counties ... for care in a Type 1 juvenile correctional facility," and increased the "the amount authorized for … 'Type 1 juvenile correctional facilities— statewide,'" "for the purpose of project planning, development, and design, site

15

selection, and land and property acquisition for a new Type 1 juvenile correctional facility in Milwaukee County." *Id.* at §§ 109, 199, 388-89, 9104(5)(d). The most recent biennial budget made similar appropriations. *E.g.*, 2023 Wis. Act 19 §§ 454g, 9104(5)(a), 9104(8).

¶36 These appropriations were made by a legislature with full knowledge that: (1) no SRCCCYs were currently operating, and (2) the only DOC-operated Type 1 juvenile correctional facilities in existence were the two that they had ordered closed in the 2017 and 2019 Acts.[7] The legislature did not amend the nonstatutory deadlines, nor did it provide any remedy for noncompliance with those deadlines. Instead, the legislature continued to fund the facilities that they had ordered closed.

¶37 In sum, this court concludes that the SJOP at WIS. STAT. § 938.34(4h) remains a lawful and valid dispositional option, notwithstanding the reference to "juvenile correctional facility" in relation to sub. (4m). Furthermore, the 2017 and 2019 Acts did not limit physical placements under the SJOP at Type 1 juvenile correctional facilities. Therefore, and because Lincoln Hills and Copper Lake continue to operate as Type 1 juvenile correctional facilities, physical placements at those facilities is lawful.

## II. Restitution

¶38 J.A.J. argues that the record does not support the circuit court's restitution order of $375 to victim J.S. J.A.J. argues that J.S.'s testimony and

---

[7] It is presumed that the legislature acted with full knowledge of the existing law. *Kindy v. Hayes*, 44 Wis. 2d 301, 314, 171 N.W.2d 324 (1969); *Blazekovic v. City of Milwaukee*, 225 Wis. 2d 837, 845, 593 N.W.2d 809 (Ct. App. 1999).

written victim impact statement attesting to the value of the items for which restitution was sought was insufficient, and the circuit court should have required receipts or other documentary proof of value. This court rejects J.A.J.'s argument.

¶39    "[T]he purpose of restitution is to return victims of a crime to the position they were in before the defendant injured them." *State v. Johnson*, 2005 WI App 201, ¶14, 287 Wis. 2d 381, 704 N.W.2d 625. "[A] restitution hearing is not the equivalent of a civil trial and does not require strict adherence to the rules of evidence and burden of proof." *Id.* The circuit court is free to accept and reject evidence and give accepted evidence the weight it desires. *State v. Boffer*, 158 Wis. 2d 655, 663, 462 N.W.2d 906 (Ct. App. 1990).

¶40    During the May, 20, 2022 restitution hearing, victim J.S.'s written victim impact statement was admitted into evidence. It listed the value of the items for which restitution was sought:

1. AirPods—$200

2. LED light—$60

3. Shammy—$25

4. Wallet—$50

5. Driver's license—$40

J.S. testified that the values on the victim impact statement were correct.

¶41    There is no authority supporting J.A.J.'s contention that J.S. should have been required to provide documentary proof of value to support his request for restitution. The circuit court accepted J.S.'s testimony as sufficient evidence and in the absence of evidence to the contrary, its finding was not clearly

erroneous. Accordingly, we affirm the circuit court's May 25, 2022 restitution order.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.